**Armando PALUMBO, Plaintiff,**

v.

**NELLO L. TEER COMPANY**
**and**
**George Tingen, Defendants.**

**Civ. A. No. 15540.**

United States District Court
D. Maryland.

April 15, 1965.

227

Ward B. Coe, Jr., Baltimore, Md., for plaintiff.

Richard A. Reid, Towson, Md., for defendants.

WINTER, District Judge.

Defendant Nello L. Teer Company (Teer) has moved for summary judgment, and plaintiff has filed a countermotion, both of which raise questions with regard to the scope and application of § 62, Article 101, of the Annotated Code of Maryland, a portion of the Maryland Workmen's Compensation law.[1] Through their counsel, the parties agree that, with respect to the question raised there is no genuine dispute as to any material fact. Essentially, the question is whether under the facts here plaintiff's suit for personal injuries allegedly arising out of negligence on the part of the defendant is barred by § 15 of Article 101 of the Annotated Code of Maryland, which provides that an employer's liability to an employee under the workmen's compensation law shall be "exclusive" when the employer has secured the payment of

1. Plaintiff's motion is directed to the second defense asserted by Teer in its answer, which is that Teer's sole liability to plaintiff is for compensation under the Act, and also to the first defense, which is that the complaint fails to state a claim upon which relief can be granted, insofar as such first defense is to be treated as an assertion that plaintiff cannot recover as a matter of law. Manifestly, plaintiff cannot be entitled to final judgment, and plaintiff's motion will be treated as a motion to strike.

compensation for his injured employees and their dependents, as provided by other provisions of the law, it being admitted that Teer has complied with the applicable provisions of Article 101.

The question is presented from the following facts: Teer was a general contractor for the Maryland State Roads Commission in the construction of the John F. Kennedy Expressway. Part of the work to be performed was the hauling of top soil from the right of way on which the road was to be constructed, and Teer subcontracted with B & K Trucking Company, Inc. and/or Edward Stepanchuk (B & K) for haulage. On or about July 25, 1963, B & K entered into a subcontract with Clifton Haulage (Clifton) for haulage of the top soil.

Clifton is a partnership, in which the plaintiff and a certain Joseph Nadeau are copartners. It was formed, without written partnership agreement, in the second week of April, 1963. Plaintiff and Mr. Nadeau made equal capital contributions. The plaintiff contributed two trucks titled in his name which have remained titled in his name, and Mr. Nadeau contributed a truck titled in his name which has remained titled in his name, together with other assets. Plaintiff and Mr. Nadeau were equal partners. They were paid no salary as such, but drew equally upon the profits of the partnership. The drawings were usually $100.00 per week. The firm had two employees, one who assisted in the operation of the trucks and another in running a gasoline service station, which was also a partnership asset. Both partners were working partners, in that each, together with the employee hired for that purpose, operated the three trucks owned by the partnership. All trucks were covered by public liability and property damage insurance, and the partnership carried workmen's compensation insurance in compliance with the laws of the State of New Jersey, where the principal office of the partnership was located, with respect to employees, but- providing no protection to the copartners.

The agreement between Clifton and B & K was that Clifton be paid 63¢ a cubic yard for top soil which it hauled. After loading, Clifton's trucks were weighed, the known weight of the empty truck deducted, and payment made on the net weight of the load. The route between the place of loading and the place of dumping was selected by Clifton. The number of loads to be carried daily was not fixed by B & K, and B & K exercised no control over rest periods, lunch hour, and the time that trucks were removed from service for refueling, or any other purpose. Nor were the daily starting and stopping times subject to control. So long as there were sufficient trucks in operation to keep loaders busy at the pickup point and the spreader busy at the unloading point truckers were free to come and go as they pleased. No specific instructions were given by anyone as to procedures in loading or unloading, other than to designate in the first instance the place of pickup and the place of dumping. B & K requested and obtained a general certification from Clifton that the latter had public liability insurance on its trucks, but no certification was ever requested or furnished in regard to workmen's compensation insurance.

On or about July 27, 1963, two days after Clifton began to perform services under its contract with B & K, plaintiff was injured when defendant Tingen allegedly caused a front end loader to back into and run over plaintiff while plaintiff was dismounted from one of Clifton's trucks for the purpose of obtaining a ticket evidencing the weight of the load then being hauled. It is alleged that defendant Tingen was an agent, servant and employee of Teer, acting within the scope of his employment, and that defendant Tingen negligently caused plaintiff's injury, without any negligence on the part of plaintiff contributing thereto. *Inter alia*, plaintiff alleges that his injury necessitated amputation of his left leg below the knee.

In addition to answering the complaint, Teer has pleaded § 15 of Article 101 which, as before stated, limits the liability of a complying employer to his employee to the benefits provided under the

Workmen's Compensation Act, and has also pleaded that plaintiff was Teer's employee by virtue of § 62 of Article 101, which reads as follows:

"§ 62. Employees of subcontractor may claim against contractor.

"*When any person as a principal contractor, undertakes to execute any work which is a part of his trade, business or occupation which he has contracted to perform and contracts with any other person as subcontractor, for the execution by or under the subcontractor, of the whole or any part of the work undertaken by the principal contractor, the principal contractor shall be liable to pay to any workman employed in the* execution of the work any compensation under this article which he would have been liable to pay if that workman had been immediately employed by him; and where compensation is claimed from or proceedings are taken against the principal contractor, then, in the application of this article, reference *to the principal contractor shall be substituted for reference to the employer,* except that the amount of compensation shall be calculated with reference to the earnings of *the workman under the employer by whom he is immediately employed.*

"Where the principal contractor is liable to pay compensation under this section, he shall be entitled to indemnity from any *employer,* who would have been liable to pay compensation to the *employee* independently of this section, and shall have a cause of

action therefor against such *employer.*

"Nothing in this section shall be construed as preventing a *workman* from recovering compensation under this article from the subcontractor instead of from the contractor.

"Whenever an *employee* of a subcontractor files a claim under this article against the principal contractor, the principal contractor shall have the right to join the subcontractor or any intermediate contractors as defendant or codefendant in the case."   (Emphasis supplied.)

Specifically, Teer asserts that plaintiff was a "workman employed in the execution of the work" of Teer within the meaning of the section, and that, properly construed, § 62 equates that phrase with the word "employee" elsewhere used in § 62.  Plaintiff asserts that § 62 has application only to persons who are employees of another, that plaintiff was not his own employee, and that, therefore, Teer was not plaintiff's statutory employer.

■   The undisputed facts clearly establish that plaintiff was not an employee of Clifton. At most, he was a copartner. While there is some authority that a copartner may be an employee of the partnership of which he is a copartner, plaintiff in this case had none of the indicia of an employee, 58 Am.Jur. (Workmen's Compensation), § 146; 44 A.L.R. 1217, 1218;  25 A.L.R. 376, 379;  15 A.L.R. 1288, 1293.  The question to be decided thus becomes one of whether plaintiff, not being an employee of Clifton, is rendered an employee of Teer by virtue of § 62.[2] Stated otherwise, the question is

2.  Teer makes no contention that plaintiff was an employee of B & K, and under the facts and applicable Maryland law no such claim could be made.  B & K engaged trucks, not the plaintiff, and B & K did not attempt to specify that plaintiff operate any one of the trucks. B & K did not pay plaintiff wages. The parties did not contemplate that they were creating the relationship of master and servant, as demonstrated by the fact

that the expenses of operating plaintiff's truck were paid by Clifton, Clifton was paid by the quantity of work it performed, and there was no withholding of state or federal income taxes, Social Security or unemployment tax on the amounts paid to Clifton. Even more decisive is the fact that B & K exercised no control over plaintiff or Clifton, other than to fix the point of pickup and the point of dumping, Anderson Nursing

230

whether a workman, as that term is used in § 62, means any person who performs *any* work on a construction project, or whether it is to be confined to those persons who perform work on a construction project *as employees of another*. The Maryland courts have not had occasion to provide the exact answer. It is, therefore, the duty of this Court to attempt an accurate prediction of what the Maryland courts will decide when the question is presented to them.

■■ The Court concludes that § 62 applies only to those workmen who are employees of another, that plaintiff was thus not a "workman employed in the execution of the work" within the meaning of § 62 and that, therefore, plaintiff's suit is *not* barred by § 15, notwithstanding that Teer was in full compliance with the Maryland Workmen's Compensation law. This conclusion is reached for the following reasons:

Article 101, when viewed in its entirety, excluding consideration of § 62, is cast in terms of the employer-employee concept. Section 21, which provides compensation for injuries sustained or death incurred in the pursuit of extra-hazardous employments, specifically speaks of "employees" engaged in such pursuits. Section 22, which provides compensation for disability or death resulting from occupational disease, is made applicable to "an employee of an employer." Section 31, which permits employers and employees engaged in works not extra-hazardous within the meaning of Article 101, to have joint election to bring themselves within the terms of its coverage, gives the option to "Any employer, his employee or employees * * *." It is not without significance that this section, in providing the minimum age at which an employee may exercise the option, refers to an employee who has not reached majority as "any workman."

Homes v. Walker, 232 Md. 442, 194 A.2d 85 (1963); Marine v. Service Trucking Co., 225 Md. 315, 170 A.2d 188 (1960); L. & S. Construction Co. v. State Accident Fund, 221 Md. 51, 155 A.2d 653 (1959). See also, Sparks v.

■ In construing the workmen's compensation law in other regards, the Maryland Court of Appeals has repeatedly held that in order for Article 101 to be applicable, the master-servant relationship in the common law sense must exist, and that an independent contractor is not covered, Anderson Nursing Homes v. Walker, supra; Marine v. Service Trucking Co., supra; L. & S. Construction Co. v. State Accident Fund, supra; Cox v. Sandler's, Inc., 209 Md. 193, 120 A.2d 674 (1956); Sun Cab Co. v. Powell, 196 Md. 572, 77 A.2d 783 (1951); Hart v. Sealtest, Inc., 186 Md. 183, 46 A.2d 293 (1946); Baltimore Transit Co. v. State, 183 Md. 674, 39 A.2d 858, 156 A.L.R. 460 (1944); Kramer v. Globe Brewing Company, 175 Md. 461, 2 A.2d 634 (1938). The reason for these decisions is that the basic purpose of the workmen's compensation act substitutes the benefits of the act for the employer's common law liability for negligence and removes the employer's common law defenses.

■ Section 62 must be read in the light of this basic concept, in the absence of specific language to indicate that it had the more extensive purpose of broadening workmen's compensation benefits to persons who are not employees. That § 62 had no such purpose but, rather, had the purpose of obviating the sometimes difficult and troublesome construction of who was an employee's employer on a construction project where there were numerous subcontractors and subsubcontractors, and to obviate the use of subcontractors and subsubcontractors as a device for avoiding financially responsible workmen's compensation coverage is spelled out in State to Use of Hubert v. Bennett Bldg. Co., 154 Md. 159, 140 A. 52 (1928).

L. D. Folsom Company, 217 Cal.App. 2d 279, 31 Cal.Rptr. 640 (1963); Employers Mut. Liability Ins. Co. of Wisconsin v. Bromley, 4 Misc.2d 702, 158 N.Y.S.2d 669 (S.Ct. Monroe Cty. 1957).

In that case the Building Company, a corporation engaged in the construction of buildings, entered into a subcontract with Joseph B. Dunn & Sons, Inc. for the finishing of tile floors of a building in the course of completion. An employee of the subcontractor was killed in the course of his employment. The employee's dependent mother sought an award under the workmen's compensation act, and she was awarded compensation, which was directed to be paid by Dunn. Notwithstanding that Dunn and its insurance carrier were discharging the award, the dependent mother brought a suit against the Building Company. It, in turn, pleaded the provisions of §§ 15 and 62 of Article 101, and it was held that the mother's suit was barred. The court discussed at length the purpose and effect of § 62 and, notwithstanding the length of the quotation, it is important that it be set forth in full. The court said (pp. 161–164, 140 A. p. 53):

"It is common practice in certain trades for one party to agree for a reward to complete a certain work or undertaking, and then to enter into subcontracts with various parties providing for the execution by them respectively of specified parts of the whole work or undertaking, so that the whole or part thereof would be done by such subcontractors and their assistants. In this manner the principal contractor would avoid in part the responsibility for accidents happening in the carrying out of the work or undertaking. *If this responsibility were so shifted upon parties too weak financially to meet it, and who had not secured compensation to their employees in one of the ways required by the statute, an injured workman, proceeding at common law or under the Workmen's Compensation Act, would obtain neither compensation nor damages.* Furthermore, difficult questions arose with reference to *whether the workman was the servant of the principal contractor rather than of his immediate employer,* depending largely upon who had power to hire and discharge, to direct and control the workmen, and a variety of other circumstances. In order to obviate these contingencies, and more certainly to assure the workman his contemplated compensation, the statute has imposed, under a certain state of circumstances, a liability to pay upon the principal contractor, *although he might not have been held at common law the employer of the injured workman.* In short, section 62 of article 101 of the Code, known as the 'Workmen's Compensation Act,' has provided that, where any principal contractor has undertaken to execute any work in the way of his trade, business, or occupation that he has contracted to perform, and contracts with any other party as a subcontractor for the execution by or under the subcontractor of the whole or any part of the work undertaken by the principal contractor, the principal contractor shall be liable to pay to any workman employed in the execution of the work any compensation under the act which he would have been liable to pay if that workman had been immediately employed by him; and, where compensation is claimed from or proceedings are taken against the principal contractor, then, in the application of the act, reference to the principal contractor shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the workman under the employer by whom he was immediately employed. *The effect of this provision, when brought into operation through the designated state of circumstances, is to impose the absolute liability of an employer upon the principal contractor when he was not in law the employer of the injured workman.* The result, then, is that, where the prescribed conditions ex-

232

ist, *the principal contractor becomes by the act the statutory employer of any workman employed in the execution of the work.* * * *" (Emphasis supplied.)

The language of the statute fully supports the comments concerning it made in the Bennett Building Co. case, supra, and indicates that § 62 has no application to a plaintiff in the factual situation in the case at bar. The first paragraph of § 62 imposes on the general contractor the liability under the Workmen's Compensation Act which he would have had "if that workman had been immediately *employed* by him." Should there be any doubt that the employer-employee concept, found elsewhere in Article 101 was fully preserved, that doubt is removed by the language in the remainder of the first paragraph which says that for the purposes of the other provisions of Article 101 "reference to the principal contractor shall be substituted for reference to the *employer.*"

That § 62 is to be construed solely as providing a new *remedy* for an employee who would otherwise be faced with the burden of the sometimes complex question of who was his employer, but not to constitute as "employees" persons who are not at common law employees is further demonstrated by the second paragraph of § 62. A principal contractor would hardly have been given an *unqualified* right of indemnity from any subcontractor where, as in the case at bar, the subcontractor—to be more precise, the subsubcontractor—would not have been liable to the workmen's compensation claimant. The same may be said about the third paragraph. There would be no necessity to preserve the right of a "workman" to recover from a subcontractor instead of the general contractor if it had not been contemplated that the only "workmen" entitled to recover from the general contractor were employees of a subcontractor. The fourth paragraph evidences a similar legislative intent.

■ Two arguments advanced by Teer warrant special comment. Teer argues that great significance must be attached to the preposition *"by"* in the phrase "for the execution by or under the subcontractor" in the initial sentence of § 62 when that phrase refers to the work which is the subject of a subcontract. In effect, Teer argues that "by" contemplates that the work be done by the principals of the subcontractor, as well as its employees. This is not a necessary construction and is one which is rejected by the Court. The more reasonable construction seems to be that the statutory liability of the general contractor is not limited solely to employees of the subcontractor, but extends also to employees of a subsubcontractor who obviously has no contractual relation with the general contractor. It is true that as an expression of legislative intent the use of the phrase "under the subcontractor" alone, would probably accomplish this result, but the use of the broader phrase "by and under the subcontractor" makes clear this legislative intent.

■ Closely related to this contention is that of Teer that under the construction placed upon § 62 by the Court in the instant case, Teer is exposed to common law liability to persons beyond its contemplation, in that Teer did not know that B & K would subcontract to a working subsubcontractor who was not an employee of anyone. The answer to this contention is that Teer, as a condition to its subcontract to any subcontractor, can either prohibit absolutely a subcontractor from further subcontracting, or require a subcontractor to obtain Teer's approval and consent to any further subcontract.

For the reasons stated, the Court concludes that Teer is not entitled to summary judgment and, further, that plaintiff is entitled to have Teer's affirmative defenses referred to above stricken.

Counsel may agree upon a form of order.