582 A.2d 1244

**INNER HARBOR WAREHOUSE, INC. et al.**

v.

**Gordon L. MYERS**

**No. 117, Sept. Term, 1989.**

Court of Appeals of Maryland.

Dec. 24, 1990.

Alan M. Carlo (Montedonico & Mason, Chartered, both on brief), Baltimore, for petitioners.

Laurence A. Marder (Suzanne K. Farace, Israelson, Salsbury, Clements & Bekman, all on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS,* and CHASANOW, JJ.

COLE, Judge.

In this case we are asked to decide four issues that relate to Maryland's workers' compensation law as embodied in Md.Code (1957, 1985 Repl.Vol., 1989 Cum.Supp.), Article 101: [1] (1) whether the president, who is also the sole stockholder and chief executive officer of a close corporation, is an individual intended to benefit from the protection of Article 101, § 62 as an employee of an uninsured subcontractor; (2) whether that individual who had not purchased workers' compensation insurance had thereby elected not to avail his company of the protections of the workers' compensation article; (3) whether a principal contractor is obligated to file an employer's first report of injury for any injuries sustained by its subcontractors' employees; and (4) whether the Respondent's claim was barred by the applicable statute of limitations.

The facts of the case are not disputed. At the time of the accident, Inner Harbor Warehouse & Distribution, Inc. (Inner Harbor), was under retainer by Eluma International, U.S.A. (Eluma) to transport Brazilian engine blocks from their point of arrival at the Port of Baltimore to Inner

---

* Adkins, J., now retired, participated in the hearing and conference of this case while an active member of the Court; but did not participate in the decision and adoption of this opinion.

1. As noted by the Court of Special Appeals, the term "workers' compensation" is synonymous with "workmen's compensation." *Inner Harbor v. Myers*, 80 Md.App. 1, 3, n. 1, 559 A.2d 376 (1989), citing the provisions of Chapter 279, Acts of 1984.

Harbor's warehouse for future distribution on an ongoing basis. Inner Harbor did not own trucks capable of handling the job, so it retained truck owners and their drivers to haul the engine blocks.

G.K. Myers, & Son, Inc. (G.K. Myers), a close corporation whose president, sole stockholder [2] and chief executive officer was Gordon Myers, was in the business of retaining truck drivers for companies such as Inner Harbor. The drivers of G.K. Myers, in fact, drove almost exclusively for Inner Harbor. Respondent was a truck driver by trade who, along with other drivers, performed truck driving services for Inner Harbor under G.K. Myers' retainer agreement.

On October 18, 1984, Myers was hauling the Brazilian engine blocks from the Port of Baltimore to Inner Harbor's warehouse. While travelling along a ramp in downtown Baltimore, the load shifted in the truck. As a result thereof, the container and the tractor trailer fell over the side of the ramp and landed on the railroad tracks below. Myers suffered serious injuries including the amputation of one leg below the knee and the partial amputation of several of his fingers.

At the time of the accident G.K. Myers was not covered by workers' compensation insurance. The parties do not dispute the fact that sometime in April of 1984 Myers had communicated with Reese Bean, the president and chief executive officer of Inner Harbor, about having the latter company provide workers' compensation insurance to the employees of G.K. Myers. The parties disagree on Bean's ultimate response to the request. It is clear, however, that as of the time of the accident, G.K. Myers & Sons was not covered by workers' compensation insurance. The extent of Inner Harbor's cognizance of that fact is unknown, but Inner Harbor has made no allegation of fraud or misrepre-

---

2. Myers apparently owned the stock with his wife, but they, as a family unit, were the sole stockholders, so for the sake of ease, we shall refer to Myers as the sole stockholder.

sentation on the part of G.K. Myers about its uninsured status.

Shortly after the accident, Myers notified representatives of Inner Harbor of his injuries. He then filed a claim with the Workers' Compensation Commission (WCC) on December 22, 1986 naming Inner Harbor as his employer. He argued he was entitled to compensation because he was Inner Harbor's employee, or, in the alternative, that Inner Harbor was his statutory employer. The WCC found Myers to be an independent contractor rather than an employee and therefore denied the claim. Myers moved for a rehearing which motion was denied.

On appeal to the Circuit Court for Baltimore City, Myers filed a Motion for Partial Summary Judgment alleging he was entitled to insurance coverage under Inner Harbor's policy by virtue of Article 101, § 62 of the Code. The motion was granted by the court, and Inner Harbor appealed.

The judgment of the circuit court was affirmed by the Court of Special Appeals which held that: (1) Myers did not elect to exempt himself from workers' compensation insurance coverage merely because he did not procure that insurance for his company; (2) Myers was a "statutory employee" of Inner Harbor within the meaning of § 62; and (3), an employer's duty to file a report of injury upon receiving notice of an employee's injury, and the consequence of failing to so file, apply to a § 62 "statutory employer" when an accidental injury befalls a "statutory employee;" since Inner Harbor failed to file the report with regard to Myers, the statute of limitations period applicable to Myers' claim was tolled pursuant to Article 101, § 38(c). *Inner Harbor v. Myers*, 80 Md.App. 1, 559 A.2d 376 (1989). We granted certiorari to conduct our own examination of the issues presented.

### I

We first note that this case requires us to review the trial court's entry of summary judgment for Respondent Myers.

In this regard, our task is to determine whether the entry of summary judgment was appropriate under the circumstances of the case. Md.Rule 2–501(e) provides that summary judgment is warranted "if the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." In determining whether any factual issues exist, the trial court must resolve all inferences against the party moving for summary judgment. *See Brady v. Ralph Parsons Co.*, 308 Md. 486, 495, 520 A.2d 717 (1987); *Honaker v. W.C. & A.N. Miller Development Co.*, 285 Md. 216, 231, 401 A.2d 1013 (1979) (*Honaker II*). Upon our review we must also determine whether there is a genuine dispute as to any material fact and whether the moving party is entitled to judgment as a matter of law, which task requires resolving all inferences against the moving party. *Brady v. Ralph Parsons Co.*, 308 Md. at 496, 520 A.2d 717; *Liscombe v. Potomac Edison Co.*, 303 Md. 619, 621, 495 A.2d 838 (1985).

## II

Petitioner first alleges that Myers cannot meet the requirements of worker status in order to fall under the protection of § 62. Inner Harbor argues that Myers, as the president, sole stockholder and chief executive officer of G.K. Myers, exhibits none of the indicia of an employee for purposes of § 62.

Petitioner likens the instant case to *Palumbo v. Nello L. Teer Company*, 240 F.Supp. 226 (D.C.Md.1965). While noting that that case is not binding precedent on this Court, Petitioner nevertheless asks us to recognize its factual similarities. In *Palumbo*, the plaintiff was a truck driver for and a partner in the partnership that had subcontracted to haul loads for the general contractor, Teer. He was injured in the course of that employment. The court found that Palumbo was not an employee of his own partnership and that because he was not a worker within the meaning

of § 62, Palumbo was not a statutory employee of Teer. By analogy to the facts of *Palumbo,* Inner Harbor avers that Myers, as president, sole stockholder and chief executive officer of G.K. Myers, is not its statutory employee.

Myers counters by stating he is in fact a statutory employee of Inner Harbor as defined by § 62. He argues that Article 101, § 21(b) specifically confers employee status upon officers of close corporations who perform services for the corporation for monetary payment. Myers also distinguishes *Palumbo* from his case by pointing out that the *Palumbo* court recognized that by definition, a partner is not an employee under § 21.

The primary issue we must resolve is whether Myers is an individual meant to benefit from the protections of § 62. The cardinal rule of statutory construction is to ascertain and effectuate the actual intent of the legislature. *Kaczorowski v. City of Baltimore,* 309 Md. 505, 514, 525 A.2d 628 (1987); *Lovellette v. City of Baltimore,* 297 Md. 271, 282, 465 A.2d 1141 (1983); *Howard Co. Ass'n, Retarded Cit. v. Walls,* 288 Md. 526, 530, 418 A.2d 1210 (1980); *Honaker v. W.C. & A.N. Miller Development Co.,* 285 Md. at 229, 401 A.2d 1013.

In order to fall under the protection of § 62, the injured person must be a worker. To qualify as a worker one must also be an employee because independent contractors [3] are not covered by Article 101. *See Criminal Injuries Compensation Board v. Gould,* 273 Md. 486, 517, 331 A.2d 55 (1975). The first question we must resolve is whether Myers, as president, sole stockholder and chief executive officer of G.K. Myers, may be considered an employee of that corporation. Second, we must decide whether he is a "statutory employee" of Inner Harbor by virtue of § 62.

---

**3.** "Independent contractor" has been defined as "one who contracts to perform a certain work for another according to his own means and methods, free from the control of his employer in all details connected with the performance of the work, except as to its product or result." *Criminal Injuries Compensation Board v. Gould,* 273 Md. at 517, 331 A.2d 55.

Petitioner, relying on *Palumbo,* maintains that Myers cannot be an employee of his own corporation. As we see it, *Palumbo* does not support Petitioner's argument. The plaintiff in *Palumbo* was a partner in the firm that had been retained as the subcontractor. Defendant Teer was the general contractor. Plaintiff argued that as a partner of his own company he could not be an employee of himself. The court agreed. The court also held that § 62 did not apply to Palumbo because he was not the "employee of another." *Palumbo v. Nello L. Teer Co.,* 240 F.Supp. at 230. While those facts do seem very similar to the facts of the case at bar, the crucial difference becomes obvious when we analyze Article 101, §§ 21 and 67 together. Section 21 sets forth those people who are considered employers and employees under Article 101. That section states in pertinent part:

(b) **Coverage of employees.**—The following shall constitute employees subject to the provisions of this act, except as exempted under subsection (c) of this section:

\* \* \* \* \* \*

(2) Every officer of a corporation rendering services for the corporation for monetary remuneration except:

(i) An officer of a close corporation, as defined in the Corporations and Associations Article, electing not to be covered under the provisions of § 67(4) of this article;

(ii) An officer owning 20 percent or more of the outstanding capital stock of a farm corporation electing not to be covered under the provisions of § 67(4) of this article. For purposes of this subparagraph (ii) a farm corporation is defined as a corporation that derives at least 75 percent of its income from farm operations; or

(iii) An officer owning 20 percent or more of the outstanding capital stock of a professional services corporation (and performing professional services for that corporation as defined in the Corporations and Associations Article), electing not to be covered under the provisions of § 67(4) of his article.

(3) Any employer, partner or sole proprietor electing coverage under the provisions of § 67(4) of this article.

\* \* \* \* \* \*

Section 67(4) further clarifies the scope of Article 101. That definitional section states in full:

(4) **Sole proprietors, partners or corporate officers electing to become "employees."**—(i) If an employer is a partnership, or sole proprietorship, the employer *may elect to include* as an "employee" within the provisions of the act, any member of the partnership, or the owner of the sole proprietorship, devoting full time to the partnership or proprietorship business. In the event of an election, the employer shall serve upon the employer's insurance carrier and upon the Commission written notice naming the persons to be covered and *a proprietor or partner may not be an employee within this article until the notice has been served.*

(ii) Any officer of a close corporation, as defined in the Corporations and Associations Article, or an officer owning 20 percent or more of the outstanding capital stock of a farm corporation, or an officer owning 20 percent or more of the outstanding capital stock of a professional services corporation (and performing professional services for that corporation), as defined in the Corporations and Associations Article, *may elect to become exempt from coverage as an employee under the provisions of § 21(b) of this article.* In the event of such an election, the employer shall serve upon the employer's insurance carrier and upon the Commission written notice naming the persons electing not to be covered, and *every officer of a close corporation shall be an employee within this article until such notice has been served.*

(Emphasis added).

 Clearly, officers of corporations rendering services for the corporation for monetary remuneration constitute employees under Article 101 unless they choose to be exempted from coverage. It is undisputed that, as required to

attain employee status under § 21, Myers is an officer of a corporation. It is obvious that he received monetary remuneration by rendering truck driving services to G.K. Myers. Although we will later return to a discussion of whether Myers implicitly exempted himself from coverage under Article 101 by not procuring workers' compensation insurance for G.K. Myers, it is clear from the record that G.K. Myers did not serve upon the insurance carrier and the WCC written notice naming Myers as a person not to be covered. Under § 67(4)(ii), Myers would be considered an employee within the Article until such notice was served.

Section 67(4)(ii), relating to officers of corporations, indicates that certain officers are covered under Article 101 until they "elect to become exempt from coverage" by serving notice of that intent. Section 67(4)(i) demonstrates the inherent difference between this case and *Palumbo*. That subsection states that if an employer is a partnership it may "elect to include as an 'employee' within the act, any member of the partnership" by serving written notice on the insurance carrier and the Commission. Unlike corporate officers who must affirmatively elect *not* to be covered by Article 101, partners must affirmatively elect *to be* covered. No such election of coverage was served in *Palumbo*, so there is no doubt he was not considered the partnership's employee. In Myers' case, no affirmative election of non-coverage was made, so he was covered as an employee of G.K. Myers.

■ While G.K. Myers is therefore an employer of Gordon Myers, it is conceded that G.K. Myers did not carry workers' compensation insurance for its employees at the time of Myers' accident. Thus, we must analyze whether Myers may be considered a "statutory employee" [4] of Inner Harbor under § 62 so as to recover under Inner Harbor's

---

4. It is common to speak of the principal contractor's (Inner Harbor) liability as that of a "statutory employer" to a "statutory employee." *Brady v. Ralph Parsons Co.*, 308 Md. at 501, 520 A.2d 717.

workers' compensation insurance policy. That section
states in full:

### § 62. Employees of subcontractor may claim against contractor.

When any person as a principal contractor, undertakes
to execute any work which is a part of his trade, business
or occupation which he has contracted to perform and
contracts with any other person as subcontractor, for the
execution by or under the subcontractor, of the whole or
any part of the work undertaken by the principal contrac-
tor, the principal contractor shall be liable to pay to any
workman employed in the execution of the work any
compensation under this article which he would have been
liable to pay if that workman had been immediately
employed by him; and where compensation is claimed
from or proceedings are taken against the principal con-
tractor, then, in the application of this article, reference
to the principal contractor shall be substituted for refer-
ence to the employer, except that the amount of compen-
sation shall be calculated with reference to the earnings
of the workman under the employer by whom he is
immediately employed.

Where the principal contractor is liable to pay compen-
sation under this section, he shall be entitled to indemnity
from any employer, who would have been liable to pay
compensation to the employee independently of this sec-
tion, and shall have a cause of action therefor against
such employer.

Nothing in this section shall be construed as preventing
a workman from recovering compensation under this
article from the subcontractor instead of from the con-
tractor.

Whenever an employee of a subcontractor files a claim
under this article against the principal contractor, the
principal contractor shall have the right to join the sub-
contractor or any intermediate contractors as defendant
or codefendant in the case.

We note as background that what is now § 62 was added to Article 101 in 1916, two years after that Article was first enacted to compensate employees who were injured in the course of employment. Section 62 served to broaden the definition of "employer" under the Article. The impact of § 62 was "to impose the absolute liability of an employer upon the principal contractor, when he was not in law the employer of the injured workman. The result then is that where the prescribed conditions exist, the principal contractor becomes by the act the statutory employer of any workman employed in the execution of the work." *Brady v. Ralph Parsons Co.*, 308 Md. at 500–501, 520 A.2d 717 quoting *State v. Bennett Building Co.*, 154 Md. 159, 162, 140 A. 52 (1928). *Bennett Building*, arguably the seminal case in analyzing § 62, set forth the purpose of that section at length:

It is common practice in certain trades for one party to agree for a reward to complete a certain work or undertaking, and then to enter into subcontracts with various parties providing for the execution by them respectively of specified parts of the whole work or undertaking, so that the whole or part thereof would be done by such subcontractors and their assistants. In this manner the principal contractor would avoid in part the responsibility for accidents happening in the carrying out of the work or undertaking. If this responsibility were so shifted upon parties too weak financially to meet it, and who had not secured compensation to their employees in one of the ways required by the statute, an injured workman, proceeding at common law or under the Workmen's Compensation Act, would obtain neither compensation nor damages. Furthermore, difficult questions arose with reference to whether the workman was the servant of the principal contractor rather than of his immediate employer, depending largely upon who had power to hire and discharge, to direct and control the workmen, and a variety of other circumstances. In order to obviate these contingencies, and more certainly to assure the workman

his contemplated compensation, the statute has imposed, under a certain state of circumstances, a liability to pay upon the principal contractor, although he might not have been held at common law the employer of the injured workman.

*State v. Bennett Building,* 154 Md. at 161–62, 140 A. 52.

Thus, it is obvious that the General Assembly, in enacting § 62, intended principal contractors to bear the responsibility of workers' compensation coverage even if, indeed, especially if, its subcontractors had not procured their own workers' compensation insurance. All that is required for one in the position of Myers to collect workers' compensation from Inner Harbor under § 62, then, is proof that Inner Harbor is his "statutory employer."

We have repeatedly stated that a "statutory employer" is:

1. a principal contractor
2. who has contracted to perform work
3. which is part of his trade, business or occupation; and
4. who has contracted with another party as a subcontractor for the execution by or under the subcontractor of the whole or any part of such work.

*Lathroum v. Potomac Elec. Power Co.,* 309 Md. 445, 448–49, 524 A.2d 1228 (1987); *Brady v. Ralph Parsons Co.,* 308 Md. at 503, 520 A.2d 717; *Coffey v. Derby Steel Co.,* 291 Md. 241, 251, 434 A.2d 564 (1981); *Honaker II,* 285 Md. at 225, 401 A.2d 1013; *Honaker v. W.C. & A.N. Miller Development Co.,* 278 Md. 453, 460, 365 A.2d 287 (1976) (*Honaker I*).

A factual analysis leads us to the conclusion that Inner Harbor is a statutory employer of Myers. Inner Harbor is clearly a principal contractor who contracted to perform work. That company was under contract with Eluma to haul engine blocks from the port to Inner Harbor's warehouse. The contracted-for work of hauling items to be stored temporarily at Inner Harbor's warehouse is obviously part of its trade, business or occupation. Also, Inner Harbor had contracted with G.K. Myers as a subcontractor

for execution of the work that Inner Harbor was incapable of performing for Eluma by virtue of the fact it owned no trucks adequate to haul the engine blocks.

Based on the above analysis, we conclude that Myers is a "statutory employee" of Inner Harbor within the meaning of § 62.

### III

■ Inner Harbor's second contention is that Myers, by failing to procure workers' compensation insurance for G.K. Myers, affirmatively elected not to be covered by the protections of Article 101. Inner Harbor argues that although § 67 requires notice of election of non-coverage to be served on the insurance carrier and the WCC and no such notice was served, it was because Myers' inaction rendered service of the notice impossible. Petitioner seeks to make use of the analysis in *Molony v. Shalom et Benedictus*, 46 Md. App. 96, 415 A.2d 648 (1980), to provide support for its argument.

In *Molony*, the Petitioner was the president and chief executive officer of the corporation that was his employer. When he was injured he filed for workers' compensation benefits. Section 39(a), however, provides that failure of an employee to file a claim within two years of the accident constitutes a bar to the claim. Petitioner's filing date was 17 days too late. *Id.* at 97, 415 A.2d 648.

To circumvent the requirements of § 39(a), he sought relief by reliance on § 38(b) which requires employers to report an accident such as Molony's to the WCC within 10 days after receiving notice of it. Under § 38(c), if the employer fails to so report, the statute of limitations is tolled until the report is filed. Molony argued that because his employer (his own corporation) had failed to file the necessary report, he, as the employee, should benefit from the tolling of the statute under § 38(c). The Court of Special Appeals concluded that it was the Petitioner's own responsibility as president and chief executive officer of the

corporation that was his employer to see that the notice was filed, and he was denied the award due to his own failing. *Id.* at 102, 415 A.2d 648.

Petitioner here analogizes *Molony* to this case and argues that Myers should not benefit from his own failure to purchase workers' compensation insurance. Inner Harbor maintains that common sense dictates that result.

Respondent counters by maintaining that he did not choose to exempt G.K. Myers from the coverage of Article 101. He denies the applicability of *Molony* and also argues that Inner Harbor continued to subcontract work to him although it was aware that G.K. Myers had no workers' compensation insurance. Respondent points to his conversation with Reese Bean in 1984 to that effect as proof of Inner Harbor's knowledge.

We agree with Myers that he had not affirmatively exempted his corporation from coverage. We first note that *Molony* is distinguishable from this case. *Molony* involved the provisions of §§ 38 and 39 of Article 101. They are in no way parallel to the provisions of § 67. In *Molony*, it was Petitioner's responsibility to file the report with the WCC in order to warrant an award of workers' compensation. Here, it is Myers' responsibility under § 67 to file notice with the WCC in order *not* to be covered by the protections of Article 101. The legislative mandate could not be clearer. Only the affirmative act of filing notice with the WCC exempts an employee from coverage; no such notice was filed, so G.K. Myers did not exempt Myers from coverage. Although we do not condone Myers' actions in not purchasing insurance, he has not, by that action alone, proved his desire to be exempt.

Further support for our decision may be garnered by a second look at the rationale behind § 62 as set forth in *State v. Bennett Building.* That case notes that placing the onus of paying workers' compensation on the principal contractor protects the subcontractor (often a small enterprise) who may be too weak financially to meet the burden.

*Bennett Building* clearly indicates that the principal contractor's responsibility under § 62 applies even when the subcontractor has not, as here, procured workers' compensation insurance of its own. 154 Md. at 161, 140 A. 52. The provisions of Article 101 are to be construed as liberally in favor of injured employees as the Article permits "to effectuate its benevolent purpose as remedial social legislation." *Lovellette v. City of Baltimore,* 297 Md. at 282, 465 A.2d 1141. *See also, Montgomery County v. McDonald,* 317 Md. 466, 472, 564 A.2d 797 (1989); *Howard County Ass'n, Retarded Cit. v. Walls,* 288 Md. at 530, 418 A.2d 1210. A liberal interpretation in favor of the one harmed, the one least able to bear the expense of injury, dictates a clear result.

## IV

Since the last two issues presented by Petitioner are closely related, we shall discuss them together. Inner Harbor alleges that Myers' workers' compensation claim is barred by the applicable statute of limitations notwithstanding the fact that Inner Harbor did not file an employers' first report of injury as is required by an employer under § 38(b) of Article 101. Inner Harbor maintains that the law does not require a principal contractor to file such a report. As support for its argument Inner Harbor states that § 38(b) is titled "Report of accident by employer," and it provides that whenever an accident occurs to any "employee" it is the duty of the "employer" to file a report. Because the subsection does not make reference to principal contractors, Inner Harbor believes itself to be exempt from filing the report. Thus, the argument continues, the statute of limitations was not tolled by the failure of Inner Harbor to file the report, and Myers' claim, having been filed more than two years after the compensable accident, is barred.

Myers counters by arguing that the filing requirements of § 39 must be construed in light of § 38. Myers again refers to the language of § 62 which, he alleges, makes

clear the fact that for purposes of Article 101, the principal contractor is treated as if it were the employer of the workman.

Again, we agree with Myers. Section 39, in pertinent part, states:

(a) **Accidental injury; report of physician; failure to file application as bar.—**
When an employee is entitled to benefits under this article, he shall file with the Commission his application and the report of his physician, provided he was attended by a physician of his own selection, within sixty days after the date of his accidental injury, for which compensation is claimed, and failure to do so, unless excused by the Commission, either on the ground that the insurance carrier or the employer has not been prejudiced thereby, or for some other sufficient reason, shall be a bar to any claim under this article; *provided, however, that failure of an employee to file a claim for compensation within two years from the date of the accident shall constitute a complete bar to any claim under this article.*

(Emphasis added).

While that section does provide a bar to employees not filing for compensation with the WCC within two years of the accident, it must be read in conjunction with § 38(b) and (c). Those subsections read, in pertinent part, as follows:

\* \* \* \* \* \*

(b) **Report of accident by employer.**—Whenever an accident causing disability for a period of more than three days following the happening of such accident occurs to any employee, it *shall* be the duty of the employer within ten (10) days after the receipt of such accident, oral or written, to report such accident and injury resulting therefrom to the Commission.

(c) **Effect of employer's failure to file report after having been given notice.**—Where the employer has been given notice, or the employer, or his designated representative in the place where the injury occurred, has knowl-

edge of any injury or death of an employee, and the employer fails, neglects or refuses to file a report thereof, as required by the provisions of subsection (b) of this section, the limitations prescribed by this article shall not begin to run against the claimant or any person entitled to compensation until such report shall have been furnished as required by subsection (b) of this section. This section shall not apply to an "employee" as defined by § 67(4) [§ 67(3)].

(Emphasis added).

On many occasions we have stated that the word "shall" is presumed to have the mandatory meaning under principles of statutory construction. Unless the legislature suggests otherwise, "shall" denotes an imperative obligation. *See Montgomery County v. McDonald,* 317 Md. at 487, 564 A.2d 797 (Adkins, J., dissenting) and cases cited therein. Therefore, the employer has an affirmative obligation to file a report of the accident within 10 days of receipt of notice. If no such report is filed, the statute of limitations does not begin to run against the claimant until the employer files the report. Thus, the bar against claims detailed in § 39 applies only to claims not filed by the injured employees within two years after a timely report has been filed by the employer. *Howard County Association of Retarded Citizens v. Walls,* 288 Md. 526, 418 A.2d 1210 (1980) is in accord. That case involved a similar factual scenario. There, we also construed § 39 in light of § 38 and held that the employer's previous failure to file a required accident report rendered the two year limitation period of § 39 inapplicable to the parties, thereby not acting as a bar to the employee's claim. *Id.* at 532, 418 A.2d 1210.

■ The fact that the report must be filed by the "employer" of the claimant does not change our holding even though Inner Harbor was not the immediate employer of Myers. The express language of § 62 supports our holding: "... and where compensation is claimed from or proceedings are taken against the principal contractor, then, in the application of this article, reference to the principal

contractor shall be substituted for reference to the employer...." Clearly, a claim for compensation has been made and proceedings have been taken against Inner Harbor. Thus, in applying all the sections of Article 101 (including, of course, § 38), we may substitute "principal contractor" for "employer." Inner Harbor is therefore to be treated as the employer of Myers for purposes of § 38. Since Inner Harbor did not file an employer's first report of injury, the statute of limitations was tolled, and Myers had not passed its limit. Therefore, his claim is not barred.

JUDGMENT AFFIRMED.

PETITIONER TO PAY THE COSTS.

McAULIFFE, Judge.

Assuming, as the majority holds, that the claimant is a statutory employee of Inner Harbor Warehouse & Distribution, Inc. (Inner Harbor), and that his conduct in failing to obtain worker's compensation insurance for his company should not be treated as an election not to be covered by the worker's compensation law, his claim is nevertheless barred by his failure to file within two years from the date of his accident. The majority relies upon the provisions of Article 101, § 38(c) Maryland Code (1957, 1985 Repl.Vol., 1989 Cum.Supp.) to relieve the claimant of the effect of his failure to make a timely filing. Section 38(c) provides, in pertinent part, as follows:

(c) *Effect of employer's failure to file report after having been given notice.*—Where the employer has been given notice, or the employer, or his designated representative in the place where the injury occurred, has knowledge of any injury or death of an employee, and the employer fails, neglects or refuses to file a report thereof, as required by the provisions of subsection (b) of this section, the limitations prescribed by this article shall not begin to run against the claimant or any person entitled

to compensation until such report shall have been furnished as required by subsection (b) of this section.... Section 38(b) provides:

(b) *Report of accident by employer.*—Whenever an accident causing disability for a period of more than three days following the happening of such accident occurs to any employee, it shall be the duty of the employer within ten (10) days after the receipt of notice of such accident, oral or written, to report such accident and injury resulting therefrom to the Commission. Such report shall state (1) the time, cause and nature of the accident and injuries, and the probable duration of the injury resulting therefrom; (2) whether the accident arose out of and in the course of the injured person's employment; (3) any other matters and rules and regulations as the Commission may prescribe.

Section 38(a) requires the employee, or someone on his behalf, to give timely notice of injury to the employer:

(a) *Notice.*—Notice, in writing or otherwise, of any injury for which compensation is payable under this article shall be given to the employer within ten days after the accident.... Such notice, if in writing, shall contain the name and address of the employee, and state in ordinary language the time, place, nature and cause of the injury and be signed by him or by a person on his behalf....

Assuming, without conceding, that § 38(b) may, under some circumstances, require a "statutory employer" to file an employer's report with the Workmen's Compensation Commission, this does not appear to be such a case. Section 38(b) clearly applies to employers in the usual sense of the word. Placing a duty on the true employer of an individual to report that employee's accident to the Workmen's Compensation Commission, when the employer has received notice in accordance with § 38(a), is an eminently reasonable and entirely logical requirement. Placing a duty on a contractor to give notice to the Commission of any injury to any employee of a subcontractor about which the

contractor may learn, without more, is unreasonable and illogical. It may be that where the notice contemplated by § 38(a) is given to the contractor, and the contractor is also notified that the employer-subcontractor did not carry worker's compensation insurance, the contractor would be required to give notice to the Commission. In such a case, the contractor is on notice that the claimant is treating the contractor as the "statutory employer."

Here, with respect to the notice given to Inner Harbor, we are told only that "representatives of Inner Harbor were notified of the accident immediately after it occurred." Respondent's Brief at 9. Given the nature of the accident, and the responsibility of Inner Harbor for the engine blocks that were on the truck which toppled off the highway ramp, the fact that representatives of Inner Harbor knew of the accident, and at least incidentally of the claimant's injuries, is understandable. That does not mean, however, that the claimant or anyone on his behalf gave oral or written notice to Inner Harbor pursuant to § 38(a), sufficient to put Inner Harbor on reasonable notice that the claimant was looking to it as the responsible "statutory employer" under worker's compensation law. I am not persuaded, on this state of the record, that summary judgment should have been entered against Inner Harbor.

Moreover, whatever the general contractor's duty to give notice to the Commission may be in the ordinary case, this is not the ordinary case. The claimant in this instance was both employer and employee. As employer, it was undeniably his duty, primary if not exclusive, to make the report required by § 38(b) to the Commission. To allow the claimant to avoid the bar of limitations by the simple expedient of failing to file a report that he was required by law to file, is inequitable. *Molony v. Shalom et Benedictus*, 46 Md. App. 96, 415 A.2d 648 (1980). I would reverse the judgment of the Court of Special Appeals and vacate the summary judgment entered below.

CHASANOW, J., joins in this dissent.