DONALD PLUMMER MOLONY *v.* SHALOM ET BENEDICTUS ET AL.

[No. 1318, September Term, 1979.]

*Decided June 17, 1980.*

The cause was argued before Thompson, Melvin and
Wilner, JJ.

*Herbert J. Arnold* and *Gail R. Smith,* with whom were
*Arnold, Beauchemin & Tingle, P.A.* on the brief, for
appellant.

*Thomas J. Michels, Assistant Attorney General,* with
whom were *Stephen H. Sachs, Attorney General,* and
*Charles R. Goldsborough, Jr., Assistant Attorney General,*
on the brief, for appellees.

Wilner, J., delivered the opinion of the Court.

Md. Ann. Code art. 101, § 39 (a) provides that the failure
of an employee to file his claim for workmen's compensation
benefits within two years from the date of the compensable
accident "shall constitute a complete bar to any claim under
[the Workmen's Compensation law]." Appellant missed the
deadline by 17 days; the accident occurred February 10,
1971, but his claim was not filed until February 27, 1973.
Thus, the Workmen's Compensation Commission and, on
appeal, the Circuit Court for Montgomery County, rejected
his claim.

Appellant seeks relief from this "complete bar" by
interposing the provisions of § 38 of art. 101. Subsection (b)
thereof requires the employer to report an accident (causing
three or more days of disability) to the Workmen's
Compensation Commission within 10 days after receiving
notice of it. Subsection (c) then states that where an
employer has been given such notice (or otherwise has
knowledge of the accident) and "fails, neglects or refuses" to
file the required report, "the limitations prescribed by this
article shall not begin to run against the claimant . . . until
such report shall have been furnished. . . ." The employer in
this case did not file the required report until the very day

of the hearing on appellant's claim, May 7, 1977. Thus, appellant contends that by reason of the employer's dereliction the § 39 (a) statute of limitations never began to run against his claim, and that the Commission and the Court erred in concluding otherwise.

The wrinkle in the case is that appellant's employer (appellee) is a corporate entity and at all relevant times appellant was its president and chief executive officer. It is for that reason that the lower tribunals refused to apply § 38 (c); they concluded that it was appellant's responsibility as president and chief executive officer to see that the notice was properly and timely filed, and they declined to award him the benefit of his own failing. The basic question that we must decide is whether the court was wrong in drawing that conclusion; and, in considering that question, we are guided by the limitations of Maryland Rule 1086.[1]

The record is somewhat sketchy with respect to the employer and the precise nature of appellant's relationship with it. The employer, Shalom et Benedictus, is a non-profit charitable corporation chartered in Virginia. None of the basic corporate documents — charter, by-laws, trustees' minutes — are in evidence, and our knowledge of how it operated comes primarily from the testimony of appellant given at the hearing before the Commission and in an earlier proceeding before the United States District Court.[2]

Appellant was a social worker, a counselor who worked with difficult children referred by the juvenile court. At the request of some judges and ministers, he "formed" Shalom et Benedictus in February, 1970, although its actual incorporation took place later that summer. He was, he said,

---

1. "When an action has been tried by the lower court without a jury, this Court will review the case upon both the law and the evidence, but the judgment of the lower court will not be set aside on the evidence unless clearly erroneous and due regard will be given to the opportunity of the lower court to judge the credibility of the witnesses."

2. Appellant's injury, for which compensation was sought, arose from an automobile accident. Appellant was a passenger in one of the vehicles, and had sued the driver of the car. The transcript of his testimony given in that proceeding on May 8, 1975, was entered as an exhibit in the Workmen's Compensation case and is therefore part of the record before the circuit court and before us.

"the director of the whole operation, and specifically the welfare of the children, caring for the children and counseling them." After incorporation, there was a four-member Board of Trustees, but its duties were never explained. Appellant, as noted, was the president and also served as one of the trustees.

At some point, appellee purchased, for $333,000, a 1200-acre fruit farm in Western Maryland, and moved its operation there from Virginia. This, of course, added a new dimension to appellee's operation. The farm consisted of some 23,000 fruit trees, and required the efforts of 12 tenant families and up to 200 employees to manage. This was in addition to what was involved in dealing with the children referred by the courts.

Prior to appellee's acquisition of this property, the farm operation had been managed by one Jarreda Close, and the Board of Trustees opted to retain him as general manager of the farm. Mr. Close thus became an employee of appellee, at an annual salary of $10,400. Subsequently, he was elected a vice-president of appellee, but that did not occur until after appellant's accident.

Although the record is not as clear and precise as it could be, it appears from appellant's testimony that Close's responsibility was to operate the farm and handle all administrative matters pertaining to that operation, whereas his (appellant's) function was to superintend the juvenile center and attend to all matters relating to it. He described his duties as follows:

> "My job was taking care of the youngsters; accompany them to Court. Testifying in the various corporation proceedings. Finding the right psychiatrist or psychologist to work with the youngster, as that was indicated that they had proper medical care. Housing, shelter. Trying to raise money to keep going."

and Close's job, by way of contrast:

> "Everthing concerning the farm, families, with the

exception of the children Close handled everthing. He handled the tenant families. The migrant workers, the temporary workers that came in. The ordering of orchard supplies. . . . With the exception of the children, he handled all personnel."

Appellant lived at the center and was available all the time, seven days a week. For this, he received free room and board and a salary of $400 a month. Close, on the other hand, worked only on weekdays and lived elsewhere.

There were some administrative or clerical matters of a business nature that were not handled by Close — indeed that for a time were apparently not handled by anyone. On February 8, 1971 (two days before the accident), a secretary — Mrs. Hutchinson — was hired *by appellant.* One of her duties was to keep a daily log "of every incident that took place on the property that concerned the children in any way whatsoever." This log — actually a standard desk calendar — became one of the chief records of the corporation, in which both Mrs. Hutchinson and appellant recorded significant events. Some evidence of the state of affairs, in terms of handling routine business matters, appears from the entry made by appellant on February 11, 1971 (the day after the accident): "Happy day — a bookkeeper — all we have is paper bags full of bills, receipts and checks."

Although appellant had some contact with the State Accident Fund on behalf of appellee, to the extent of requesting forms and notifying it of a change of address, he said that Close was supposed to prepare the forms for appellee, and "the only time I saw any forms, they were in Mr. Close's office over at the warehouse which was about two or three miles from the main house."

An overall summary of appellant's function appears from this colloquy with the Commission:

> "THE COMMISSION: Can I assume for purposes of this here, that as of the date of your alleged accident you were the Chief Administrative and/or Executive Officer of the Shalom Et Benedictus? You were the President?

THE WITNESS: I was President, the Chief Executive Officer, yes, sir.

THE COMMISSION: I see. According to that, anything that was done was done under your direction or by your approval involving any administration of the corporation or administrative —?

THE WITNESS: With the exception of the farm.

THE COMMISSION: Well, there are certain things that certain people delegate.

THE WITNESS: No, this is delegated by the Board in specific action."

Appellant's accident, as noted, took place on February 10, 1971, while he was engaged in business relating to the juvenile center. Although once an issue in the case, we shall assume that he gave proper notice of the accident to appellee by advising Mr. Close, Mrs. Hutchinson, and at least one of the trustees of what had occurred. Within a few days, appellant began to experience severe pain which, though keeping him from doing some things, did not disable him from carrying out his overall responsibilities. Disability, in that sense, did not arise until he was hospitalized on April 29, 1971. Accordingly, the employer's report referred to in § 38 was not required to be filed until at least May 1, 1971. *See Douglas v. American Oil Co.,* 235 Md. 4 (1964); *Walls v. Howard Co. Ass'n, Retard. Cit.,* 44 Md. App. 168 (1979).

Although both Mr. Close and Mrs. Hutchinson were aware of the accident, the injury, and, we presume, ultimately of the disability, they did not file the report; nor does the record show that either of them was requested or directed to do so.

In February, 1972, appellee moved from the Maryland farm back to Virginia. The Maryland property was ultimately sold. The record does not indicate whether Mr. Close moved with the operation or, if he did not, whether anyone else assumed the administrative duties previously performed by him. Appellant remained with appellee until

April, 1972, when he took a leave of absence and ultimately terminated his employment.

With respect to the employer's report, the record shows that on April 2, 1973 — about a month after appellant filed his claim — an investigator for the State Accident Fund sent the appropriate forms *to Mrs. Hutchinson,* in Virginia, apparently in response to an earlier telephone conversation, with instructions to "complete forms and forward three copies to me. Retain copy for your file." The forms were duly completed and, on April 11, 1971, returned to the investigator. For whatever reason, they were never filed with the Commission, however, and still sat in the Fund's file on the day of the hearing.

Upon this evidence, the court concluded that:

> "[B]e it on the basis of his overall responsibility for the operation of the project or on the basis of his responsibility for the phase of the operation in which he was engaged at the time of the accident, we think [appellant] had a clear duty to see that Shalom et Benedictus complied with Section 38 (b) by timely reporting his accident to the Commission. Having failed to do so, he cannot now invoke Sections 38 (b) and (c) to preserve his rights as a claimant."

We shall affirm.

Notwithstanding the somewhat special provisions pertaining to sole proprietorships, partnerships, and *close* corporations in the Workmen's Compensation Law (*see* art. 101, § 67 (4)), the fact is that an ordinary corporation is not a self-acting or automated entity. It acts only when human beings act for it. A corporation files a report only when some responsible person prepares the report and causes it to be delivered to the Commission. In most cases, of course, a person other than the claimant has the clear responsibility to see that this is done; perhaps for that reason we are unable to find any case in the country dealing with the specific issue before us. But where the injured employee is

himself responsible for seeing to it that the report is made —
where, in effect, he is both the employer and
claimant-employee — he cannot evade his responsibility as
employer and thereby gain an unwarranted advantage as
claimant-employee. As a matter of law, therefore, if
appellant in fact occupied these dual roles, he is required to
discharge the responsibilities of each or suffer the
consequence of failing either one. *Cf. Renco, Inc. v. Nunn,*
474 P.2d 936 (Okl. 1970).

Whether he indeed occupied the role of employer — the
causative agent for corporate action — is a question of fact,
to which, as noted, the "clearly erroneous" standard of
Maryland Rule 1086 applies. Upon this record, we cannot
say that the court made such a clear error. Even if it was Mr.
Close's initial or primary responsibility to file the required
report (and there was substantial evidence to the contrary),
we do not believe that the court was clearly erroneous in its
conclusion that, as president and overall superintendent of
the operation, it was nevertheless appellant's obligation to
see that this was done.

*Judgment affirmed; appellant
to pay the costs.*