676 A.2d 51

UNINSURED EMPLOYERS' FUND

v.

William LUTTER et al.

No. 58, Sept. Term, 1995.

Court of Appeals of Maryland.

May 8, 1996.

James W. Himes, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, on brief), Towson, for Petitioner.

Desiree M. Lange (Barry M. Chasen, Chasen & Boscolo, Chartered, on brief), Greenbelt, for Respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

CHASANOW, Judge.

This case presents the question of whether officers of Maryland close corporations, who decide not to purchase workers' compensation insurance for themselves but fail to notify the State of their decision and are subsequently injured working for the corporation, may collect workers' compensa-

tion benefits from the state-operated Uninsured Employers' Fund. We hold that uninsured close corporation officers are not "covered employees" under the Workers' Compensation Act when they decide, in their capacity as corporate officers, not to carry insurance for themselves and they fail to notify the Workers' Compensation Commission of their decision. Hence, they are not entitled to benefits from the Fund.

## I.

William Lutter, the respondent, was injured in a job-related accident in February, 1991 while working for Lutter Construction, Inc., a Maryland close corporation wholly owned by Lutter and his wife. The Lutters formed the corporation in 1988, and Lutter served as president, and his wife as vice president of the corporation. Although the corporation previously employed other workers, the record indicates that Lutter was the corporation's only employee at the time he was injured.

Between 1988 and 1990, the corporation carried workers' compensation insurance covering Lutter with State Farm Insurance. In 1990, after conversations with an agent for Aetna Insurance, Lutter decided to cancel the State Farm policy and switch to Aetna to save money. In making the switch, however, Lutter dropped the workers' compensation insurance the corporation had been carrying on him. The record is unclear as to whether Lutter knew or understood that the workers' compensation coverage had been dropped from his insurance package at the time his corporation switched insurers. But if Lutter was not aware of his lack of insurance at that time, he shortly became aware. Soon after he switched from State Farm to Aetna, Lutter himself called his agent to cancel the workers' compensation insurance on a former employee and discovered that no such insurance had ever been purchased from Aetna. Lutter's deposition, which was an exhibit in the trial court, indicates his decision-making process:

"[LUTTER:] I found out later on that I had cut State Farm for workman's comp[ensation] and they were providing me with liability. I didn't find that out until July of that year.

Q. After the accident?

A. No, before the accident. . . .

Q. What did you do then?

A. I called up to—the man that was working for me quit, so I called up to cancel my insurance on him. And, at that time is when I found out that I hadn't had workman's comp[ensation] with them at all, at that time.

\* \* \* \* \* \*

Q. When you found out that you had no worker's comp[ensation] insurance, did you ask them to place insurance for you?

A. No, because I didn't have any work at the time, and the man told me until you hire somebody that you don't really need insurance—

Q. Who told you that?

A. —as long as you have health insurance. Mr. Katz.

And then when I hired somebody, to call him up and then he would go ahead and sign me up again."

After discovering that Lutter Construction, Inc., did not have workers' compensation insurance, Lutter did *not* purchase it for the corporation, apparently taking the advice of his insurance agent that workers' compensation insurance was not necessary as long as he was Lutter Construction's only employee and had health insurance. Lutter acknowledged in his deposition that he was responsible for procuring workers' compensation insurance for the corporation. Yet despite having a lawyer, accountants, and another insurance agent available, Lutter made no effort to consult with any of them in order to confirm the Aetna insurance agent's advice.

In February of 1991, approximately six months after he decided not to purchase workers' compensation insurance from Aetna, Lutter fell from the roof of a building while on the job and was seriously injured, remaining in the hospital

for almost two months. He filed a claim with the Workers' Compensation Commission (the Commission), seeking benefits from his close corporation pursuant to the Maryland Workers' Compensation Act, Maryland Code (1991 Repl.Vol., 1995 Supp.), Labor and Employment Article, § 9–101 *et seq.*[1] As the corporation had no insurance, Lutter sought benefits from the Uninsured Employers' Fund (the Fund), which was established by the State to provide workers' compensation benefits for injured workers whose employers fail to purchase workers' compensation insurance for them. *See* § 9–1002; RICHARD P. GILBERT AND ROBERT L. HUMPHREYS, JR., MARYLAND WORKERS' COMPENSATION HANDBOOK § 14.3, at 300 (2nd ed. 1993).

The Commission denied Lutter's claim for benefits on the ground that Lutter was not a "covered employee" within the meaning of the Workers' Compensation Act. Lutter appealed to the Circuit Court for Prince George's County, which affirmed the Commission's ruling on a motion for summary judgment. Lutter then appealed to the Court of Special Appeals, which reversed the circuit court, holding that Lutter was a "covered employee" under the statute and thus entitled to benefits from the Fund. *Lutter v. Lutter Construction,* 103 Md.App. 292, 653 A.2d 517 (1995). We granted the Fund's petition for certiorari.

## II.

### A.

Under the Maryland Workers' Compensation Act (the Act), an employer is generally required to pay workers' compensation benefits to an employee who suffers an accidental person-

---

1. Unless otherwise indicated, all statutory references are to Maryland Code (1991 Repl.Vol., 1995 Supp.), Labor and Employment Article.

 The accident that caused Lutter's injuries occurred before the Workers' Compensation Act was recodified from Md.Code (1957, 1985 Repl. Vol., 1990 Cum.Supp.), Art. 101, § 1 *et seq.* to title 9 of the Labor and Employment Article. Since the relevant provisions of the Act were not substantively changed in this recodification, we will cite the sections of the Act as they are now codified.

al injury in the course of employment. *See* § 9–501. The Act requires all employers to obtain workers' compensation insurance or to implement an approved self-insurance program to cover the cost of any benefits awarded to an injured worker. § 9–402(a). An employer's failure to provide insurance for employees can result in criminal prosecution. § 9–1107(b). In the event that an employer does not purchase the required workers' compensation insurance, an injured employee can still receive benefits by applying to the state-operated Fund.[2] § 9–1002(e).

As a general rule, employers are required under the Act to carry workers' compensation insurance for all their workers that fit the Act's definition of a "covered employee." *See* § 9–402. Officers of corporations are considered covered employees under the Act if they provide services to the corporation in return for pay. § 9–206(a). Thus a corporation is ordinarily required to purchase workers' compensation insurance for corporate officers who provide paid services to the corporation. An exception to this rule allows officers of close corporations[3] to exclude themselves from the corpora-

---

**2.** All funds received by the Uninsured Employer's Fund are held, managed and disbursed by the State Treasurer. §§ 10–315, 10–318 and 10–319. The Fund is administered by a board appointed by the Governor with the advice and consent of the Senate. § 10–308. The board and staff are paid in accordance with the State budget. *See* § 10–309. In *Workmen's Comp. Comm. v. P. & C. Ins.*, 319 Md. 1, 570 A.2d 323 (1990), we said:

> "[T]he assessment proceeds which fund the ... [Uninsured Employers' Fund] constitute government revenue raised by legally required payments to be expended for public purposes. As such, they are 'taxes.'"

319 Md. at 6, 570 A.2d at 325.

**3.** Close corporations are governed by Md.Code (1975, 1993 Repl.Vol.), Corporations and Associations Article, § 4–101 et seq. A close corporation is one in which the stock is subject to certain transfer restrictions, and which has elected close corporation status by a unanimous vote of its stockholders. William G. Hall, Jr., *The New Maryland Close Corporation Law*, 27 MD. L. REV. 341, 341–42 (1967). Generally, a close corporation has a limited number of stockholders who actively participate in the business, a close personal relationship among the stockhold-

tion's insurance coverage by filing a notice of their decision to be exempt from coverage with both the corporation's insurance carrier and with the Commission. § 9–206(b). Section 9–206 provides in pertinent part:

"(a) *In general.*—Subject to subsection (b) of this section, an officer of a corporation ... is a covered employee if the officer ... provides a service for the corporation ... for monetary compensation.

(b) *Election to be Exempt.*—An individual who otherwise would be a covered employee under this section may elect to be exempt from coverage if:

(1) the individual is an officer of a close corporation....

\* \* \* \* \* \*

(c) *Notice of election.*—(1) A corporation ... shall submit to the Commission and to the insurer of the corporation ... a written notice that names the individual who has elected to be excluded from coverage.

(2) An election under subsection (b)(1) ... of this section is not effective until a corporation complies with this subsection."

At first glance, Lutter appears to be a covered employee within the meaning of § 9–206. At the time of his injury, Lutter was president of Lutter Construction, Inc., and he performed construction work for the corporation. Hence, he was an officer who provided a service for the corporation for monetary remuneration. *See* § 9–206(a). The real question, however, is whether Lutter effectively exempted himself from his status as a covered employee under § 9–206(b) by deciding, in his capacity as corporate president, not to purchase workers' compensation insurance for himself.

If Lutter did exempt himself under § 9–206(b), then he is not a covered employee and, therefore, not entitled to benefits from the Fund. *See* § 9–1002(e) (only covered employee or dependents of covered employee may apply for benefits from

---

ers, and does not have an established market for the corporation's stock. *The New Maryland Close Corporation Law*, 27 Md. L. Rev. at 341.

the Fund). Lutter contends that despite his decision not to purchase insurance for himself, he did not effectively exempt himself from coverage under the Act because he did not file written notice of his election to be exempt with the Commission as required by § 9–206(c). We disagree.

## B.

Initially, we note that the requirement in § 9–206(c) that the corporation notify its insurance carrier of Lutter's decision to exempt himself from coverage is inapplicable in this case because the corporation was not carrying any workers' compensation insurance, and thus there was no workers' compensation insurance carrier to notify.[4] In addition, the corporation's insurance agent obviously knew that the corporation was not carrying workers' compensation insurance.

The requirement in § 9–206(c) that the Commission be notified in writing of a corporate officer's election to be exempt exists *for the benefit of the State,* not for the benefit of the corporate officer. The clear purpose of the provision is to ensure that the State, in the form of the Commission, is aware that a particular corporate officer is no longer a covered employee.[5] The notice requirement does not exist for the

---

**4.** The dissent urges a mandatory requirement in § 9–206(c) that the *Commission* be notified of an uninsured close corporation officer's decision to be exempt from coverage, and concludes that an uninsured close corporation officer remains a covered employee until such notice is provided. The dissent does not explain, however, how an officer of a close corporation electing to carry no insurance could comply with the requirement in § 9–206(c) to notify the corporation's *insurer* where the corporation has no insurance.

**5.** The dissent contends that the notice requirement also exists to protect "innocent" close corporation officers by ensuring that they will be covered employees until the corporation files a written notice of exemption. 342 Md. at 358, 676 A.2d at 63. This protection, the dissent argues, is "destroy[ed]" by our holding in the instant case. The dissent's construction of our holding is simply incorrect. As we plainly point out in Section III, *infra,* our holding applies only in cases where the close corporation officer seeking to claim benefits from the Fund *also had the responsibility to ensure that the corporation carried workers' compensation insurance.* Hence, an "innocent" officer who was not

protection of the corporate officer who is already aware of his or her decision to be uninsured.

 Because the notice provision exists solely for the benefit of the State, the State has the right to waive the notice requirement. *See Blaustein v. Aiello,* 229 Md. 131, 138, 182 A.2d 353, 357 (1962) ("[T]he right to notification may be waived by the person for whose protection it is exactable . . . ."), *cert. denied and appeal dismissed,* 371 U.S. 233, 83 S.Ct. 326, 9 L.Ed.2d 494 (1963); 2 MAURICE H. MERRILL, MERRILL ON NOTICE § 877, at 395 (1952) ("One may waive the advantage of a law providing for notice which is intended solely for his own benefit.") (footnote omitted). By contesting Lutter's claim for benefits, the State, in the form of the Fund, has waived the notice requirement.[6] Hence, Lutter's failure to notify the Commission of his decision not to purchase workers' compensation insurance had no effect on Lutter's status under § 9–206.

## C.

 By deciding to work as an employee of his close corporation without workers' compensation insurance, we believe Lutter elected to be exempt from the State workers' compensation system. The mere fact that he failed to notify the State of his election does not entitle him to workers' compensation benefits from the Fund. Lutter's own deposition makes clear that he knew exactly what he was doing when he

---

responsible for the decision not to purchase insurance would still be a covered employee, even if the corporation did not purchase insurance for the officer and did not notify the Commission.

**6.** Although § 9–206 requires that the Commission, not the Fund, be notified of a corporate officer's decision to be exempt from coverage, both the Commission and the Fund are instruments of the State. Thus, the State, acting through the Fund, can waive the requirement that it be notified. Lutter should not be able to receive what this Court has characterized as "government revenue," *see* note 2, *supra,* solely because he failed to notify a state agency of his decision not to purchase workers' compensation insurance.

decided to operate his corporation without purchasing workers' compensation insurance coverage for himself. On the advice of his insurance agent, Lutter decided that the corporation didn't "really need" the insurance as long as Lutter was the only employee and was covered by health insurance. As corporate president, Lutter was both the person who made the decision not to protect himself with workers' compensation insurance, as well as the person with the corporate responsibility to notify the Commission of his decision. Hence, he cannot be permitted to receive benefits from the Fund merely because he neglected or refused to perform his duty to notify the Commission.

In fact, as the dissent suggests, Lutter may be criminally liable for failing to procure the required insurance for himself. *See* §§ 9–1107(c) and 9–1108(b) (making corporate officers who have the responsibility for the "general management of the corporation" criminally liable for failing to secure payment of workers' compensation). Allowing him to collect workers' compensation benefits, therefore, would violate the common law principle that one should not be permitted to benefit from his own criminal conduct. *See Ford v. Ford,* 307 Md. 105, 109, 512 A.2d 389, 391 (1986); *Chase v. Jenifer,* 219 Md. 564, 567, 150 A.2d 251, 253 (1959); *Price v. Hitaffer,* 164 Md. 505, 165 A. 470 (1933).

We agree with the Fund that the principle announced in *Molony v. Shalom Et Benedictus,* 46 Md.App. 96, 415 A.2d 648 (1980), applies in the instant case. Molony, a corporate president, was injured while working for the corporation. He then filed a claim for workers' compensation benefits, but not until after the two-year limitation for a claim had expired. In an attempt to avoid the effect of the two-year limitation, Molony argued that the limitation did not apply because his employer, *i.e.*, the corporation of which he was president, had not filed a report of employee injury within 10 days of receiving notice of the accident, as required by the Act. Hence, Molony contended, the two-year limitations period had not begun to run and he was eligible for benefits. *Molony,* 46 Md.App. at 97–98, 415 A.2d at 648. The Court of Special Appeals rejected this

argument, noting that Molony, as corporate president, had a duty to see that the report of injury was filed. Hence, he could not invoke the corporation's failure to file the report to preserve his rights as a claimant. Judge Wilner explained:

"[W]here the injured employee is himself responsible for seeing to it that the report is made—where, in effect, he is both the employer and claimant-employee—he cannot evade his responsibility as employer and thereby gain an unwarranted advantage as claimant-employee. As a matter of law, therefore, if appellant in fact occupied these dual roles, he is required to discharge the responsibilities of each or suffer the consequence of failing either one."

46 Md.App. at 102–03, 415 A.2d at 651.

We believe this reasoning applies in the instant case. As president of the corporation, Lutter was responsible for notifying the Commission that he had decided not to purchase insurance for himself and had therefore exempted himself from the Act under § 9–206(c). He cannot use his own failure to notify the Commission as the basis for his eligibility for benefits. By occupying the dual roles of employer/employee, Lutter was "required to discharge the responsibilities of each or suffer the consequence of failing either one." *Molony,* 46 Md.App. at 103, 415 A.2d at 651.

It is obvious that the legislature's purpose in creating the Fund was to protect injured workers whose employers failed, either willfully or negligently, to carry workers' compensation insurance for them. *See* MARYLAND WORKERS' COMPENSATION HANDBOOK § 14.3, at 300. It would be a gross distortion of this purpose to hold, as Lutter urges us to do, that the Fund must also pay benefits to individuals who knowingly and deliberately choose to operate their close corporation without purchasing workers' compensation insurance for themselves solely because they did not notify the Commission of their decision.

We hold that when officers of close corporations make a conscious and deliberate decision not to purchase workers' compensation insurance for themselves, they cannot claim the

status of a covered employee for the purpose of collecting benefits from the Fund, regardless of whether they comply with the notice requirement in § 9–206(c).[7] To hold otherwise would enable officers of close corporations to effectively get free workers' compensation coverage from the Fund simply by not buying insurance for themselves and not notifying the Commission of their decision. Surely, the legislature did not intend such an absurd result. *See Md. State Retirement v. Hughes,* 340 Md. 1, 7, 664 A.2d 1250, 1253 (1995) (noting that statutory construction is approached from a commonsensical perspective, and that the Court should avoid constructions that are illogical, unreasonable or inconsistent with common sense).

### D.

The history of the provisions allowing corporate officers to be covered under the Act supports our holding. The Act was originally designed to cover employees, not employers. *See* MARYLAND WORKERS' COMPENSATION HANDBOOK § 4.2–2, at 63. Traditionally, although corporations were separate entities from those who worked for the corporation, cases and statutes in some states did not permit workers' compensation coverage for corporate executives because they were considered employers rather than employees. *See* 1C ARTHUR LARSON, THE LAW OF WORKMEN'S COMPENSATION § 54.21(d), at 9–232–33 (1986). As Professor Larson explains:

"At one time the majority rule appeared to rule out such coverage, on the ground that, even though the corporation is a separate entity in law, some human beings must exert the powers that belong to the employer-corporation, and those persons, the officers and directors, must, therefore, for

---

7. We pause to point out that our holding today has no effect on the eligibility of close corporation officers who seek to collect benefits under an insurance policy purchased by a statutory employer. *See Inner Harbor v. Myers,* 321 Md. 363, 582 A.2d 1244 (1990). As we explain in Section II(E), *infra, Inner Harbor* is distinguishable from the instant case. Hence, its holding is not affected by our decision today.

compensation purposes, be identified with the employer while exercising those powers." (Footnote omitted).

*Id.*

Later, workers' compensation coverage became available to most employers. *See* MARYLAND WORKERS' COMPENSATION HANDBOOK § 4.2–2, at 63–64. For example, in 1968 the legislature amended the Act to permit partners and sole proprietors devoting full time to the partnership or proprietorship business to elect to be "covered employees" under the Act. *See* Chapter 742 of the Acts of 1968. Similarly, in 1971, the legislature amended the Act to include as covered employees corporate officers providing paid services to the corporation. *See* Ch. 119 of the Acts of 1971.

The legislative history of the provisions allowing corporate officers to be covered under the Act indicates that in 1978 the General Assembly amended the statute so that officers of close corporations were *excluded* from coverage unless they specifically *opted into coverage* by filing written notice with the Commission. *See* Ch. 634 of the Acts of 1978. As a result of the amendment, the number of notices filed with the Commission by close corporation officers seeking to opt into coverage increased so dramatically that the Commission needed an additional clerk to handle the added work. In response, the legislature in 1979 amended the provision to provide that officers of close corporations were automatically covered unless they filed a notice opting out of coverage. *See* Ch. 582 of the Acts of 1979. A memorandum prepared for the legislature by the State Department of Fiscal Services on the fiscal impact of the 1979 amendment states:

"Last year the number of inquiries and notices received by the Commission was so great concerning close corporation officers that the Commission believes it needs a Typist–Clerk II for this purpose. This would entail $9,014 in additional expenditures in the first year for the Commission, funded by general fund appropriations that are reimbursed to the State Treasury.

The Department of Fiscal Services doubts that this much activity will result with respect to close corporation officers who elect to be exempt."

Hence, the legislature's primary purpose in amending the statute to automatically cover officers of close corporations unless they filed written notice opting out was to save the State the added expense of hiring an additional clerk. The fiscal memorandum indicates that "State revenues and expenditures are not affected" by the legislation. Clearly, then, the legislature's purpose in adopting the amendment was not to provide free coverage from the Uninsured Employers' Fund for officers of close corporations who decide not to purchase insurance and fail to notify the Commission of their decision.

### E.

In concluding that Lutter's failure to notify the Commission of his decision not to purchase insurance meant that he was still a covered employee under the Act, the Court of Special Appeals relied on *Inner Harbor v. Myers*, 321 Md. 363, 582 A.2d 1244 (1990). In *Inner Harbor*, this Court held that the failure of a corporate officer/employee to purchase workers' compensation insurance for the employees of his close corporation did not prevent the officer/employee from collecting benefits under a workers' compensation policy purchased by his statutory employer. 321 Md. at 377, 582 A.2d at 1251. The Court of Special Appeals applied this reasoning to the instant case, and concluded that Lutter had not exempted himself from coverage under the Act by failing to procure workers' compensation insurance. *See Lutter*, 103 Md.App. at 296–98, 653 A.2d at 519–20.

*Inner Harbor*, however, is distinguishable from the instant case. In *Inner Harbor*, the corporate officer/employee was seeking benefits from an *insured statutory employer*, not from the Uninsured Employers' Fund. Hence, it was not in the State's interest in *Inner Harbor* to waive the statutory notice requirement now codified in § 9–206(c). Had the State waived the notice requirement in *Inner Harbor*, the insured

statutory employer would have escaped liability, and the injured corporate officer/employee would have received nothing even though an insurance policy existed that covered the officer as a statutory employee. As we noted, this result would have contravened the remedial purpose of the workers' compensation statute. *See Inner Harbor,* 321 Md. at 378, 582 A.2d at 1251.

In the instant case, on the other hand, it was clearly in the interest of the State to waive the notice requirement set out in § 9–206(c). By not waiving the notice requirement, the State would have made itself liable to pay Lutter more than $100,-000 in benefits from its own Fund,[8] even though Lutter elected not to carry workers' compensation insurance. It was clearly in the State's interest to waive the notice requirement. By contesting Lutter's claim, the State did just that.

## III.

■■■ Our holding in the instant case is a limited one. We hold that a corporate president who knowingly and deliberately decided to operate his close corporation without workers' compensation insurance for himself cannot collect benefits from the Fund solely because he did not notify the Commission of his decision to be uninsured. We stress that our holding applies only to cases where, as here, the corporate officer seeking to claim benefits from the Fund also had the responsibility to ensure that the corporation carried workers' compensation insurance. It does not apply in cases where the corporation fails to obtain insurance but the injured corporate officer/employee was not responsible for, and played no role in, the decision not to procure workers' compensation insurance.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT*

---

8. The record does not indicate the total value of the benefits that Lutter would have received under the holding of the Court of Special Appeals. It does indicate that Lutter's medical expenses totaled more than $108,000.

*WITH INSTRUCTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENTS.*

KARWACKI, Judge, dissenting.

The majority holds today that an officer of a close corporation who deliberately fails to purchase workers' compensation insurance for himself cannot thereafter collect benefits from the State Uninsured Employers' Fund when the officer is injured on the job. I respectfully dissent.

The majority's holding directly contravenes the express language of the statute governing coverage under the Act of close corporation officers, in order to achieve a result which is admittedly more desirable but nonetheless incorrect. Moreover, the contrived and internally contradictory reasoning by which the majority reaches its result leaves the state of the law regarding workers' compensation coverage of close corporation officers confused and vague. First, the majority's holding effectively overrules past precedent, while expressly claiming not to do so. Second, the majority, through this opinion, arbitrarily determines standards by which the Fund should and should not pay its benefits, standards which should rightly be determined by the Legislature after informed research and debate. Finally, the majority opinion opens the door to untoward manipulation by the State of the concept of "waiver of notice," because it finds the State did so waive where no such waiver has ever been affirmatively demonstrated or even claimed by the State.

I.

An employee hired and working in Maryland who has been accidently injured on the job, rendering the employee unable to work at all or at former capacity, is normally assured of financial support through the workers' compensation statutory scheme. The Workers' Compensation Act, Maryland Code (1991 Repl.Vol., 1995 Cum.Supp.), § 9–101 *et seq.* of the Labor

and Employment Article, (hereinafter "the Act"), requires all employers to obtain workers' compensation insurance, or to implement an approved self-insurance program; failure to do so can result in criminal prosecution of the employer, who is subject to a fine and even imprisonment for this criminal offense.[1] In the event that an employer, whether negligently or in deliberate disregard of legal obligations, has not obtained workers' compensation insurance, the injured employee can still receive financial assistance by applying to the state-operated Uninsured Employers' Fund, Md.Code (1991 Repl. Vol.), § 9–1001 *et seq.* and § 10–301 *et seq.* of the Labor and Employment Article (hereinafter "the Fund").

In the case before us, the injured worker/*employee,* nominally one of those for whose protection the Fund was initially created, also happened to be the president of the non-insured *employer,* a Maryland close corporation which he wholly owned with his wife. The claimant acknowledged himself to be personally responsible, in his capacity as president, for the corporation's conscious and illegal failure to procure workers' compensation insurance. Nevertheless, when he was injured, he filed a claim with the Workers' Compensation Commission (hereinafter the "Commission") and impled the Fund because his corporate employer was not insured. The Commission denied his claim on the basis that he was not a "covered employee" under the Act. Our purpose in granting certiorari in this case was to decide whether an injured "employee" who, unlike most others who claim benefits from the Fund, actually made the deliberate decision not to insure himself, is nevertheless a "covered employee."

Despite Lutter's responsibility for obtaining and failure to obtain workers' compensation insurance, the interplay of the statutory provisions which govern workers' compensation and the Fund leaves me no choice but to regard the claimant as a

---

1. If an employer is a corporation, the corporate officer who has responsibility for the general management of the corporation is subject to these criminal penalties. Md.Code (1991 Repl.Vol.), §§ 9–1107 and 1108 of the Labor and Employment Article.

covered employee and entitled to benefits from the Fund. The majority, unfortunately, ignores the express language of the statute in order to avoid this admittedly unsatisfactory holding.

## II.

The majority acknowledges that since Lutter's close corporation did not submit a written notice to the Commission, "[a]t first glance, Lutter appears to be a covered employee within the meaning of § 9–206." The opinion then goes on to state that "[t]he real question, however, is whether Lutter effectively exempted himself from his status as a covered employee ... by deciding, in his capacity as corporate president, not to purchase workers' compensation insurance for himself." The answer to the "real question," according to the majority, is that Lutter did exempt himself by virtue of his failure to purchase insurance.

Neither the statute itself nor our precedents countenance such an answer. The Legislature quite explicitly stated as much in subsection (c)(2) of the statute governing coverage of close corporation officers, § 9–206 of the Act, which could not be more clear: "An election under subsection (b)(1) ... of this section is not effective until a corporation ... complies with [the written notice provision]." Yet, in spite of the mandatory and unambiguous language, the majority reads an implied alternative means of exemption into the statute, thereby effectively rewriting the plain language of the statute, and contravening the express purpose of § 9–206(c)(2).

Even reading the statute with the broadest of interpretations, I cannot infer from this plain language in subsection (c)(2) an underlying legislative intent that uninsured close corporate officers can be exempted by means other than written notice, particularly non-affirmative means such as failing to purchase insurance. The statute simply precludes the majority's holding that Mr. Lutter's failure to procure insurance is an implicitly valid means of exemption. *Only* written notice to the Commission and to its workers' compen-

sation insurer serves to exempt close corporation officers from workers' compensation coverage.

I find support for my interpretation not only in the plain language of the statute but also in the Revisor's Note following the statute to which may be ascribed significant historical and interpretative weight, and in which the Code Revision Commission notes the explicit affirmative election of exemption requirement for close corporation officers only:

> "The Labor and Employment Article Review Committee notes, for consideration by the General Assembly, that, while former Art. 101, § 67(4)(ii) required notice about each election [of exemption], only the election for an officer of a 'close corporation' is *contingent on compliance.*" (Emphasis added.)

Md.Code (1991 Repl.Vol.), § 9–206 of the Act.

Moreover, the history of § 9–206, contrary to the majority's assessment, supports the expectation and intent of the Legislature that only the affirmative act of filing written notice of election of exemption would exempt a close corporation officer from coverage under the Act. In 1978, the General Assembly passed HB 908, which amended §§ 21 and 67(4) of the Act to exclude close corporation officers from automatic coverage unless they specifically opted for coverage through written notice to the insurer and the Commission naming the persons to be covered. Had an uninsured close corporation so notified the Commission that it wished to "opt-in" to coverage under the Act, the Commission would have been put on notice immediately that the employer was uninsured and would have been able to enforce the insurance provisions, before any action could arise involving the Fund.

The scanty but telling legislative history on these provisions indicates that after the amendments the Commission was flooded with notices from close corporation officers opting *in* to coverage under the Act. Therefore, during the General Assembly session in 1979, HB 780 was introduced "to correct [the] problem created by HB 908," according to notations on the bill in the legislative bill file. The Legislature passed HB

780, again amending §§ 21 and 67(4) [2] and reversing its action of the year before. Now, close corporation officers were automatically covered under the Act unless they opted *out*, with the same requirements of written notice.

No doubt "opting *out*," while it may have relieved the administrative burden on the Commission, set the stage for the instant case, for the Commission has no knowledge of the insurance status of any close corporation which does not choose to opt out of coverage for its officers under the Act. Without such knowledge, an injured close corporation officer can make a claim impleading the Fund before the Commission has the opportunity to enforce the mandatory insurance provisions, just as Lutter has done in the case before us. Nevertheless, it is absolutely clear that the Legislature intended that close corporation officers affirmatively "opt out" of coverage; it made no provisions for other forms of election of exemption, and reiterated the sole means of exemption by adding subsection (c)(2).

The majority posits that the history of the statute supports its holding, because the State Department of Fiscal Services' fiscal note on the 1979 amendment stated that the State's revenues and expenditures were not affected, and consequently the Legislature's purpose could not have been "to provide free coverage from [the Fund] for officers of close corporations who decide not to purchase insurance and fail to notify the Commission of their decision."

I agree that the Legislature did not have this purpose; legislatures do not usually have purposes so contrary to the interests of the State, and given the history of this legislation, I see no reason why a scenario such as the one before us would even have entered into the Legislature's contemplation. The only evidence before the Legislature was that close corporations opted for coverage in such huge numbers that the statute needed to be rewritten to its present form to avoid

---

**2.** These provisions were recodified at § 9–206 of the Act. The current provisions are not substantially different from the original legislation in language and effect.

administrative inconvenience and expense to the Commission. Clearly the vast majority of close corporations wanted coverage for their officers and acted responsibly in order to assure they had it. Nevertheless, a statute which is not purposefully drafted to achieve an unfortunate situation can still result in that unfortunate situation if inartfully written; Lutter's situation, apparently extremely unusual, is a result of a significant gap in a statute which might have been written to avoid the situation if it had been raised. Such a scenario was not likely raised, however, and therefore the majority's assertion that the Legislature did not intend for individuals such as Lutter to recover from the Fund says no more than that the Legislature never intends oversights in its statutory enactments.[3] Nevertheless, they exist, and our job is to point them out rather than close them judicially.[4]

---

**3.** It is also possible that the Legislature, even if it did contemplate a scenario such as Lutter's, believed, as I do, that the prospect of criminal prosecution and even incarceration for failure to purchase insurance would not be regarded lightly by the decision-makers in close corporations in Maryland.

**4.** Our Legislature would have only to turn to a nearby state to find an example of a legislative solution to the question before us. New York's current Workers' Compensation Law uses the "opt-in" approach to close corporation officers. Corporate officers such as Lutter who are sole or dual owners of close corporations are *exempt* from coverage under the workers' compensation statutes unless they specifically elect to be covered:

"Any two executive officers of a corporation who at all times during the period involved between them own all of the issued and outstanding stock of such corporation and hold all such offices, provided, however, that each officer must own at least one share of stock, who are the executive officers of such corporation that has no other persons who are employees required to be covered under this chapter *shall be deemed to be excluded from coverage under this chapter unless one or both officers elect to be covered.* Such coverage may be effected by obtaining an insurance policy or, in the case of self-insurance, by the corporation submitting a form prescribed by the chair of the workers' compensation board, giving notice that the corporation elects to bring one or both executive officers of such corporation named in the notice within coverage of this chapter."

N.Y. Workers' Compensation Law § 54(6)(e) (Consol.1982, Cum.Supp. 1996). This provision contemplates the close corporation as in the instant case and, to avoid exactly the situation we have here, requires

## III.

In *Inner Harbor Warehouse, Inc. v. Myers,,* 321 Md. 363, 582 A.2d 1244 (1990), we refused to rewrite the statute in question, as we ought to refuse it in the case *sub judice.* The Court of Special Appeals appropriately relied on our holding in *Inner Harbor* to decide that Lutter was indeed a covered employee under the language of § 9–206's predecessor, Art. 101, § 67(4)(ii). The claimant in *Inner Harbor,* Myers, much like Lutter, was the president of his own close corporation as well as an employee truck driver of the corporation. Myers, as an officer and decision-maker for the close corporation, deliberately did not carry workers' compensation insurance. When Myers was seriously injured while working under a retainer agreement with Inner Harbor Warehouse, he filed a claim with the Commission naming Inner Harbor as his employer, or, in the alternative, as his statutory employer.[5]

Our analysis of Myers' claim first required a determination that Myers was a covered employee under the Act. Inner Harbor maintained that he was not, as he had effectively exempted himself from coverage by failing to purchase workers' compensation insurance when he was clearly the individual within his corporation responsible for doing so:

---

affirmative election of coverage *by obtaining an insurance policy* or qualifying as a self-insurer.

We note that the New York Legislature, as did Maryland's General Assembly, chose to address the anomaly of an injured employee who is also the executive corporate officer within the provisions concerning coverage under the workers' compensation laws, and not within the statutes establishing an uninsured employers' fund. The implication is that the Fund pays compensation to anyone deemed "covered," as an insurer of last resort; however, by requiring any corporate officer to elect coverage affirmatively by actually obtaining insurance, the New York Legislature avoided the scenario of a corporate officer who, failing to obtain insurance, is still "covered" under the Act.

5. The term "statutory employer" denotes the principal contractor if it is liable to pay compensation benefits to a subcontractor or a subcontractor's employee (the "statutory employee") under § 9–508 of the Act. Section 9–508 is a recodification without substantive change of Art. 101, § 62, the statute in effect at the time Myers was injured.

"Inner Harbor argues that although § 67 requires notice of election of non-coverage to be served on the insurance carrier and the WCC and no such notice was served, it was because Myers' inaction rendered service of the notice impossible."

*Inner Harbor,* 321 Md. at 376, 582 A.2d at 1250. We held *unequivocally* that Myers had not affirmatively exempted his corporation from coverage by his inaction:

"Here, it is Myers' responsibility under § 67 *to* file notice with the WCC in order *not* [emphasis in original] to be covered by the protections of Article 101. The legislative mandate could not be clearer. Only the affirmative act of filing notice with the WCC exempts an employee from coverage; no such notice was filed, so G.K. Myers did not exempt Myers from coverage. *Although we do not condone Myers' actions in not purchasing insurance, he has not, by that action alone, proved his desire to be exempt."* (Emphasis added).

*Id.* at 377, 1251.

The parallels to Lutter's situation are obvious. Lutter did not, any more than Myers, prove by his failure to purchase insurance that he wished to be exempt; the record reflects, in fact, that Lutter did not understand himself to be exempt, although we cannot say what exactly he *did* understand when he was given such faulty advice by his insurance agent. Moreover, regardless of what Lutter desired or understood, he simply did not comply with the written notice provision in the statute. Under the plain language of the statute and our explicit holding in *Inner Harbor,* Lutter did not exempt himself from coverage under the Act. When the majority holds that he did, the majority effectively overrules *Myers* and ought to do so explicitly.

### IV.

The majority attempts to avoid the import of the plain statutory language of § 9–206(c)(2), as well as our holding in *Inner Harbor,* by construing the statutorily required notice to

be solely for the benefit of the State (i.e., the Commission and the Fund), and theorizing that therefore the Commission is allowed to "waive" notice when failure to receive it is not in the State's interest. The analysis is faulty on several levels.

### a.

First, the majority assumes that the only time failure to receive notice is not in the State's interest is when the State will have to pay benefits from the Fund. The majority attempts to distinguish *Inner Harbor* from the case *sub judice* on the sole basis that Myers, as culpable as Lutter for his lack of insurance, sought coverage from a statutory employer and not the Fund. Yet, if the only reason the case before us is distinguishable from *Inner Harbor* is on the basis of who pays, the logical extension of the reasoning is that it makes absolutely no difference whether Lutter was culpable or completely innocent. For example, if one fact in *Inner Harbor* changed—the statutory employer in *Inner Harbor* was uninsured—Myers would have been a candidate for Fund benefits, and under the holding today Myers would have been denied those benefits based on his culpability. The majority cannot have it both ways: either the Fund's liability to pay is the cornerstone of the analysis and culpability is irrelevant, as it was in *Inner Harbor,* or culpability for failure to purchase insurance is the cornerstone, and therefore *Inner Harbor* is overruled.

### b.

Second, of course, the notice provision is *not* only for the benefit of the State. Any close corporation officer who is not responsible for the purchase of workers' compensation insurance for his or her company also benefits from the protection of a single required affirmative written notice of exemption. The explicit legislative notice requirement, as the sole method of exemption, ensures the "innocent" close corporation officer that the Fund will not be able to deny benefits regardless of the actions of the decision-makers in his corporation. The holding today destroys that protection by judicially opening

the door to other means of exemption, rendering the statute open to manipulation by the State.

The statutes governing the creation and operation of the Fund, § 9–1001 *et seq.* and § 10–301 *et seq.* of the Labor and Employment Article, provide guidance as to the standards the Fund and the Commission must use to determine whether a claimant should receive Fund benefits. A review of the legislative history of the Fund reveals that the Fund was intended to be an "insurer of last resort," and that the only eligibility requirement by which the Commission determines who receives benefits from the Fund is whether the claimant is a "covered employee." Nothing in the recorded history of the legislation explicitly or implicitly indicates any legislative intention to limit the benefits available from the Fund based on criteria other than eligibility for workers' compensation. We note that when the Fund requested a hearing to object to Lutter's claim, the Commissioner who heard the case raised *sua sponte* the issue of covered employee status, we presume because he could not find in the statutory language any further direction as to Fund eligibility.

The legislative history reveals only a single eligibility criterion, "covered employee" status. Before the holding today, when the only apparent legislatively-set standard for payment was whether the claimant was a covered employee, the Fund could appeal only on the basis of the status of the claimant and whether any other insurance existed. After today, the gates are open, since the only legislative standard has now been supplemented with a judicially-created standard for receiving benefits from the Fund. That standard can be described as "lack of intentional failure to purchase workers' compensation insurance for yourself." Now, the Fund can develop virtually any argument to avoid paying benefits and the courts will have to consider it to determine if other judicially-created standards are advisable.

c.

Third, and of great concern to me, is the majority's holding that the State "waived notice" merely by contesting Lutter's

claim. Even assuming, *arguendo,* that the State could waive notice under the statutory enactments and our precedents, I would still be compelled to find for Lutter because the State made no argument of waiver of notice to us, nor did it raise waiver at any stage in these proceedings.

## V.

In *Molony v. Shalom Et Benedictus,* 46 Md.App. 96, 415 A.2d 648 (1980) the corporate officer was personally responsible as a representative of the corporate entity for failing to file with the Commission a report of any accident involving an employee. That corporate officer was also the employee who had been injured, and he filed his workers' compensation claim 17 days after the statute of limitations ran, which meant his claim was completely barred. The Act also provides, however, that an employer's failure to file a report tolls the statute of limitations on that particular workers' compensation claim, and the claimant in *Molony* argued that since he had not filed the report for his employer, his claim as the employee was not barred. The Court of Special Appeals rejected his argument, *even though the corporation was insured and the Fund was not liable to pay any benefits,* because the claimant's own negligent actions could not be used to gain an "unwarranted advantage."

The majority's use of *Molony* to bolster its holding only further illuminates the flaws in its analysis of the instant case. As I noted earlier, apparently the majority cannot decide whether it bases its holding on the deliberate and egregious actions of Lutter or on the fact that the Fund is being asked to pay benefits as a result of those actions. If the principle announced in *Molony* applies in the instant case, as the majority states, then, again, who pays benefits is irrelevant and the case hinges on the actions of the claimant. Therefore, the same principle would have to apply in *Inner Harbor* as well, for Myers also used his failure to file written notice to achieve the status of covered employee, thereby gaining an "unwarranted advantage" and thus receiving benefits from the statutory employer. The majority's unwillingness to overrule

*Myers* cannot be reconciled with its use of *Molony* to support its position.

## VI.

I simply cannot agree with the Fund's arguments to this Court that Lutter should be denied benefits. The statutory scheme as it presently reads does not allow such a result, and, as we have repeatedly held before, we will not fill a gap in a statutory scheme, particularly one as extensive as this Act, by supplying missing language or standards. *See,* e.g., *Fairbanks v. McCarter,* 330 Md. 39, 622 A.2d 121 (1993); *Collier v. Connolley,* 285 Md. 123, 400 A.2d 1107 (1979); *Amalgamated Cas. Ins. Co. v. Helms,* 239 Md. 529, 212 A.2d 311 (1965); *Gregg v. Gregg,* 199 Md. 662, 87 A.2d 581 (1952). Yet the majority has indeed filled the gap in a statutory scheme, and further done so in a manner which requires an explicit overruling of our 1991 decision in *Inner Harbor.*

The General Assembly created the Uninsured Employers' Fund with the benevolent purpose of providing some financial assistance to injured workers whose employers failed to carry workers' compensation insurance. It also established civil and criminal penalties for any employer failing to insure its workers, and it specifically protected the interests of officers of close corporations by automatically covering any who performed services on behalf of their corporations for monetary compensation. In the unusual case before us, in which the injured employee is also the close corporation officer criminally responsible for failing to purchase insurance, all three of these statutory purposes are relevant and are in conflict. We impermissibly intrude into the responsibilities of the Legislature when we attempt to resolve this conflict permanently through our holding today. Therefore, while I do not condone Lutter's actions in failing to obtain insurance for himself, I would nonetheless affirm the holding of the Court of Special Appeals that Lutter is a covered employee and entitled to benefits from the Fund.

RODOWSKY and RAKER, JJ., join in this opinion.