*Richard A. Elms v. Renewal By Andersen*, No. 89, September Term, 2013, Opinion by Greene, J.

**WORKERS' COMPENSATION ACT – COVERED EMPLOYEE – STATUTORY EMPLOYER PROVISION – § 9-508**

In a workers' compensation case, the first inquiry is whether a common law employer/employee relationship exists between the injured worker and his or her direct employer. When making this inquiry, the most important and decisive factor is whether the alleged employer has the right to control the employee in the manner of the employment. If it is determined that the injured worker is a "covered employee," but the injured worker is unable to recover compensation benefits through his or her direct employer, we then look to Maryland Code (1991, 2008 Repl. Vol., 2013 Cum. Supp.), § 9-508 of the Labor and Employment Article. Under § 9-508, when certain conditions are met, a principal contractor is a "statutory employer," and is therefore liable to the employee of a subcontractor for injuries sustained during the course of the work undertaken by the principal contractor and subcontractor(s). Where an employer/employee relationship is established under the traditional common law test, application of § 9-508 is inappropriate.

Circuit Court for Carroll County
Case No. 06-C-10-057891
Argued: June 5, 2014

IN THE COURT OF APPEALS
OF MARYLAND

No. 89
September Term, 2013

---

RICHARD A. ELMS

v.

RENEWAL BY ANDERSEN

---

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

---

Opinion by Greene, J.

---

Filed: July 21, 2014

This case arises out of an appeal on the record from the Workers' Compensation Commission pursuant to Maryland Code (1991, 2008 Repl. Vol., 2013 Cum. Supp.), § 9-745 of the Labor and Employment Article.[1] Petitioner Richard A. Elms ("Elms") presents two issues for our review. The first is whether the Workers' Compensation Commission misconstrued the law as applied to the facts when it concluded that Elms was an independent contractor and not an employee of Respondent Renewal by Andersen ("Renewal"). The second issue is whether the Court of Special Appeals erred when it held that a statutory employment analysis under § 9-508 of the Workers' Compensation Act must precede a common law employment analysis. We shall answer both questions in the affirmative and vacate the judgment of the Court of Special Appeals.

## FACTUAL AND PROCEDURAL HISTORY

The facts of this case are undisputed as Elms was the only witness to appear before the Workers' Compensation Commission ("Commission"), and, on appeal, both Elms and Renewal submitted to the Circuit Court for Carroll County a Joint Exhibit List that contained the same evidence presented to the Commission.

At the time of the accident giving rise to the instant case, Elms was a licensed home improvement contractor, who owned and operated an unincorporated home improvement business. The business traded as Elms Construction Company ("Elms Construction"). Elms, trading as Elms Construction, provided general construction services such as window and

_____

[1] Unless otherwise indicated, all statutory references hereinafter are to the Maryland Workers' Compensation Act, codified at Maryland Code (1991, 2008 Repl. Vol., 2013 Cum. Supp.), Title 9 of the Labor and Employment Article.

door installations, roofing, and carpentry. Some years prior to entering into a relationship with Renewal, Elms secured workers' compensation insurance as a sole proprietor.[2] Elms, however, did not elect to include himself on the policy.[3] Although it appears that Elms Construction had additional unidentified employees, the only named employee on Elms Construction's insurance policy was Richard W. Elms, Elms's son.

Renewal is a business that sells and installs windows and doors. In 2006, Elms began installing windows and doors for Renewal. Elms certified to Renewal that Elms Construction carried workers' compensation insurance. Renewal provided Elms with a document entitled "Installation Job Expectations," which included sections for "Code of Conduct," "Workmanship," "Performance," "Appearance," "General Expectations," and "Procedural Expectations," as well as a list of job site procedures and standards. Among other things, the instructions contained in the document required Elms and his workers to

---

[2] At some point in time after the relevant accident, Elms and his wife apparently elected to enter into a partnership for the operation of Elms Construction. Her duties were administrative in nature. She was not covered under the Elms Construction insurance policy.

[3] Section 9-227(a) provides that "[u]nless an election is made in accordance with this section, a sole proprietor is not a covered employee." We explained in *Inner Harbor Warehouse, Inc. v. Myers*, 321 Md. 363, 582 A.2d 1244 (1990), that "[u]nlike corporate officers who must affirmatively elect *not* to be covered by [the Workers' Compensation Act], partners [and sole proprietors] must affirmatively elect *to be* covered" under a workers' compensation insurance policy. 321 Md. at 372, 582 A.2d at 1249 (emphasis in original). At the hearing before the Commission, Elms conceded that he was not covered under his company's policy. The extent of Renewal's cognizance of that fact at the time of Elms's injury is unknown, but Renewal made no allegation of fraud or misrepresentation on the part of Elms about his uninsured status.

2

wear shirts bearing Renewal's logo, to place Renewal signs in customers' yards, to maintain neat physical appearances, and to be respectful and courteous while completing jobs for Renewal's customers.

On the first two installation jobs that Elms Construction performed for Renewal, Renewal's employees trained Elms Construction's employees in the methods and materials to be used. Subsequently, Renewal spot-checked installations completed by Elms Construction and occasionally required Elms to make corrections. Renewal also gave report cards to homeowners to rate Elms Construction installations, and Renewal then gave feedback to Elms. Elms believed that he was required to maintain a score of at least ninety percent from customer ratings.

Elms testified that by 2008 Elms Construction received eighty to eighty-five percent of its income from Renewal. At the same time, Elms Construction performed similar work for another home improvement business, Chandler Remodeling. Elms testified that, on average, he worked for Renewal four days per week. Renewal scheduled all installations and provided Elms with a monthly calendar that listed the customers' names and addresses, the number of windows and doors to be installed at each location, and a time frame for each installation. Elms had no input as to the days scheduled or time allotted for each job. While working on Renewal installations, Elms Construction used its own trucks and, usually, its own tools, but Elms always obtained the supplies and materials for installations from Renewal's warehouse. He also occasionally used Renewal's tools such as a table saw and

3

scaffolding. Renewal paid Elms Construction directly and did not withhold taxes. Renewal also did not subsidize or reimburse Elms for travel expenses, including gas. Elms Construction then paid its employees, including Elms.

On August 6, 2008, while installing a window at a Renewal customer's home, Elms fell from a ladder and injured his right foot.

Following his injury, Elms filed a workers' compensation claim with the Commission, alleging that he was Renewal's common law employee and was working for Renewal at the time of the injury. Before the Commission, Renewal argued that Elms was an independent contractor and not a covered employee for purposes of workers' compensation benefits. After a hearing on October 19, 2010, the Commission concluded that Elms was an independent contractor, rather than a common law employee of Renewal, and, therefore, not entitled to collect workers' compensation benefits under Renewal's insurance policy.

Elms filed a petition for judicial review in the Circuit Court for Carroll County pursuant to § 9-737.[4] The Circuit Court heard the appeal on the record of the Commission pursuant to § 9-745(c).[5] In a Memorandum Opinion and Order dated March 20, 2012, the

---

[4] Section 9-737 provides, in relevant part, that "[a]n employer, covered employee, dependent of a covered employee, or any other interested person aggrieved by a decision of the Commission . . . may appeal from the decision of the Commission . . . by: (1) filing a petition for judicial review in accordance with Title 7 of the Maryland Rules[.]"

[5] For a thorough discussion of the "two alternative modalities" of an appeal from the Commission, see *Board of Educ. v. Spradlin*, 161 Md. App. 155, 166-75, 867 A.2d 370, 377-81 (2005) (citing *S.B. Thomas, Inc. v. Thompson*, 114 Md. App. 357, 689 A.2d 1301 (1997)). *See also* Richard P. Gilbert & Robert L. Humphreys, Jr., Maryland Worker's Compensation

(continued...)

4

Circuit Court reversed the decision of the Commission, concluding that Elms was Renewal's common law employee and, therefore, entitled to collect workers' compensation benefits through Renewal. Thereafter, pursuant to § 9-750, Renewal appealed to the Court of Special Appeals, which vacated the judgment of the Circuit Court. The Court of Special Appeals issued its first opinion on April 5, 2013, and then, after granting a Motion for Reconsideration, issued a second opinion dated May 16, 2013. In both opinions, which are unreported, the intermediate appellate court held that the statutory employer provision of the Workers' Compensation Act, § 9-508, "abrogates the common law definitions of employer and employee 'when certain conditions are met'" and remanded the case to the Commission to determine "whether Renewal was a 'principal contractor,' whether [Elms Construction] was a 'subcontractor,' and whether [] Elms was [Elms Construction]'s sole proprietor under § 9-508(f)."

We granted Elms's petition for certiorari, *Elms v. Renewal by Andersen*, 434 Md. 311, 75 A.3d 317 (2013), to answer the following questions:

> 1. Whether the Workers' Compensation Commission misconstrued the law as it applied to the facts under § 9-745 when it determined that Elms was an independent contractor; and

> 2. Whether the Court of Special Appeals erred by holding that a § 9-508 analysis must precede a common law employment analysis.

---

(...continued)
Handbook § 16.05 (4th ed. 2013) (discussing *de novo* versus record appeals). In this case, Elms elected to forego a "*de novo* trial" in the Circuit Court and proceed on the basis of the record made before the Commission.

We shall vacate the judgment of the Court of Special Appeals and remand this case to that Court with directions to affirm the judgment of the Circuit Court for Carroll County. As a matter of law, by application of the common law to the undisputed facts established before the Commission, Elms was an employee of Renewal at the time of the accident. That relationship qualified Elms as a covered employee under the Workers' Compensation Act, and, therefore, entitled him to workers' compensation benefits under Renewal's insurance policy. Further, we shall hold that the Court of Special Appeals erred in concluding that § 9-508 "abrogates" the common law employment analysis.

## DISCUSSION

Before beginning our analysis, we note that the procedural posture of this case is that of an "unadorned administrative appeal," also known as an appeal "on the record of the Commission." *Board of Educ. v. Spradlin*, 161 Md. App. 155, 167-71, 867 A.2d 370, 377-80 (2005). Accordingly, we "look[] through the circuit court's and intermediate appellate court's decisions, although applying the same standards of review, and evaluate[] the decision of the agency." *People's Counsel for Baltimore Cnty. v. Surina*, 400 Md. 662, 681, 929 A.2d 899, 910 (2007). In reviewing appeals from the Commission, § 9-745(b) generally governs and provides that "the decision of the Commission is presumed to be prima facie correct[.]" "We have explained, though, that this presumption does not extend to questions of law, which we review independently." *Montgomery Cnty. v. Deibler*, 423 Md. 54, 60, 31 A.3d 191, 194 (2011) (citing *Wal Mart Stores, Inc. v. Holmes*, 416 Md. 346, 357, 7 A.3d 13,

6

19 (2010)).  As we shall explain further below, we review the decision of the Commission to determine whether it acted within its powers or whether it "misconstrued the law and facts applicable in the case decided."  § 9-745.

**A.**

This Court aptly summarized the history and purpose of the Maryland Workers' Compensation Act in *Rodrigues-Novo v. Recchi America, Inc.*, 381 Md. 49, 846 A.2d 1048 (2004), stating:

> The Maryland Workers' Compensation Act (hereinafter the "Act"), which is currently codified under Maryland Code, Sections 9-101 to 9-1201 of the Labor and Employment Article (1991, 1999 Repl.Vol.), was first enacted in 1914, as its title suggests, to compensate employees who were injured on the job. *Harris v. Board of Education of Howard County,* 375 Md. 21, 28-29, 825 A.2d 365, 370 (2003); *Honaker v. W.C. & A.N. Miller Dev. Co.,* 278 Md. 453, 454, 365 A.2d 287, 288 (1976) (hereinafter "*Honaker I*"); *see also Brady v. Ralph Parsons Co.,* 308 Md. 486, 496, 520 A.2d 717, 723 (1987); *Honaker v. W.C. & A.N. Miller Dev. Co.,* 285 Md. 216, 222-23, 401 A.2d 1013, 1016-17 (1979) (hereinafter "*Honaker II*"). The Act was designed as a delicate balance: on one hand, the Act took away employees' rights to sue employers for negligence, yet, on the other hand, it ensured employees the "right to quick and certain compensation for injuries sustained during the course of their employment, regardless of fault." *Brady,* 308 Md. at 496, 520 A.2d at 723 (quoting *Johnson v. Mountaire Farms,* 305 Md. 246, 250, 503 A.2d 708, 710 (1986)).

381 Md. at 56, 846 A.2d at 1052.

The Workers' Compensation Act applies to "covered employers and employees."[6]

Accordingly, the first inquiry in a workers' compensation case is whether there exists an

---

[6] Subtitle 2 of Title 9 of the Labor and Employment Article governs "covered employees and employers."

employment relationship that qualifies under the Act. *See W.M. Schlosser Co. v. Uninsured Employers' Fund*, 414 Md. 195, 206, 994 A.2d 956, 963 (2010) (stating that in a workers' compensation case, "the first question to be resolved is whether [the claimant] is a 'covered employee'"). Under the statute, there is a "presumption" that an individual is a covered employee. Specifically, § 9-202 provides that:

> (a) An individual, including a minor, is presumed to be a covered employee while in the service of an employer under an express or implied contract of apprenticeship or hire.
>
> * * * *
>
> (c) To overcome the presumption of covered employment, an employer shall establish that the individual performing services is an independent contractor in accordance with the common law or is specifically exempted from covered employment under this subtitle.

Stated differently, a worker will be deemed a "covered employee" unless it is established that he or she is an "independent contractor" under the common law rules. Accordingly, we look to the common law "master" and "servant" relationship to determine whether an individual is a "covered employee." *See Sun Cab Co. v. Powell*, 196 Md. 572, 577, 77 A.2d 783, 785 (1951) ("[T]he words 'employer' and 'employee' in the Workmen's Compensation Act are synonymous with the words 'master' and 'servant,' and the rules for determining the existence of the relation of employer and employee under the Act are the same as the rules at common law for determining the relation of master and servant."). In undertaking this analysis, we typically consider five factors: "(1) the power to select and hire the employee, (2) the payment of wages, (3) the power to discharge, (4) the power to control the employee's

8

conduct, and (5) whether the work is part of the regular business of the employer."

*Whitehead v. Safway Steel Products, Inc.*, 304 Md. 67, 77-78, 497 A.2d 803, 808-09 (1985).

Although all five factors are relevant in determining whether there is an employer/employee

relationship, we held in *Whitehead* that the power to control the employee's conduct is the

most important factor. 304 Md. at 78, 497 A.2d at 809 (stating that the employer's "'right

to control and direct the employee in the performance of the work and in the manner in which

the work is to be done' is the 'decisive' or 'controlling' test"). In other words, the one

exercising control is the employer.

In this context, "control" is demonstrated in a number of ways. For example, in the

*Whitehead* case, the respondent, Safway Steel Products, Inc. ("Safway"), contacted a

temporary services agency to retain temporary workers to perform work in its facility. The

agency assigned the petitioner, Whitehead, to perform work for Safway. *Whitehead*, 304 Md.

at 71, 497 A.2d at 805. While Whitehead was assigned to Safway's facility, Safway

instructed Whitehead on his tasks, could assign him to other duties, and "supervised and

directed his actions and rate of work." *Whitehead*, 304 Md. at 81-82, 497 A.2d at 811. As

a result of the level of control over Whitehead's actions, we concluded that Safway was

Whitehead's employer. *Whitehead*, 304 Md. at 79, 497 A.2d at 809.

In addition, the level of control necessary to be deemed an employer may be

evidenced by the amount and type of employee rules and regulations that are imposed upon

an individual. For example, in *Mackall v. Zayre Corp.*, 293 Md. 221, 225-26, 443 A.2d 98,

9

100 (1982), an employer subjected a worker to all the same rules and regulations that were applicable to a regular employee of the company, including the requirement to wear a "Zayre" logo smock. In that case, we held that the evidence clearly demonstrated that the company exercised adequate control over the worker for the worker to be considered an employee of the company. 293 Md. at 231, 443 A.2d at 103.

With that foundation in mind, we turn to the case at bar to determine whether Elms was a "covered employee" of Renewal, or whether he was an "independent contractor" as the Commission concluded. In "reviewing a decision by the Workers' Compensation Commission, 'the standard to be employed by . . . the appellate court, is limited to determining whether the Commission exceeded the powers granted to it by [the Maryland Code], and whether it misconstrued the law and facts applicable to the case decided.'" *Uninsured Employers' Fund v. Pennel,* 133 Md. App. 279, 288, 754 A.2d 1120, 1125 (2000) (quoting *Workers' Comp. Comm'n v. May,* 88 Md. App. 408, 416, 594 A.2d 1232, 1236 (1991)).

It is well established that "where the essential terms and manner of employment are undisputed, the issue as to the relation between the parties and the nature of the employment is one of law for the [c]ourt." *McElroy Truck Lines, Inc. v. Pohopek*, 375 Md. 574, 585 n.6, 826 A.2d 474, 480 n.6 (2003) (citing *Criminal Injuries Comp. Bd. v. Gould*, 273 Md. 486, 519, 331 A.2d 55, 75 (1975); *Clayburn v. Soueid*, 239 Md. 331, 337, 211 A.2d 728, 731 (1965); *Charles Freeland & Sons v. Couplin*, 211 Md. 160, 168, 126 A.2d 606, 611 (1956)).

"[A]s we recognized in *Mackall*, *supra*, the correct test for determining questions of law is whether there [are] conflicting inferences, from the evidence, on the issue of control 'in the performance of a given function.'" *Whitehead*, 304 Md. at 82, 497 A.2d at 811. Because the essential terms and manner of employment in this case are undisputed, we review the Commission's conclusion that Elms was an independent contractor for legal correctness.

In this case, the facts, as established before the Commission, demonstrated Renewal's exercise of control over Elms. It is clear that Renewal "control[led] and direct[ed]" Elms "in the performance of the work and in the manner in which the work [was] to be done." *Whitehead*, 304 Md. at 78, 497 A.2d at 809. Renewal provided detailed training and instructions to Elms regarding how to complete the installations, including how to install the insulation and the types of shims, screws, caulking, and molding to use around the windows. In addition, although Renewal did not directly supervise Elms in the performance of the work, Renewal did engage in "spot checking" of Elms's work. Renewal also required Elms to wear clothing bearing the "Renewal" logo and place a Renewal sign in the customer's yard at job sites. Renewal expected Elms to adhere to the policies and instructions contained in the "Installation Job Expectations" manual. Renewal also required customers to rate Elms's performance on report cards at the end of each installation. Further, Renewal provided Elms with a schedule of jobs that included the address of the sites, the names of the residents, and the time frame for each job. Elms had no control over the dates and times the jobs were scheduled. Accordingly, based on these facts as established before the Commission, we

11

conclude, as a matter of law, that the Commission misconstrued the law as applied to the facts when it determined that Elms was an independent contractor. We agree with the Circuit Court and therefore hold that Elms, as a common law employee of Renewal, is entitled to recover workers' compensation benefits under Renewal's policy.

**B.**

We next review the Court of Special Appeals's conclusion that § 9-508 "abrogates the common law definitions of employer and employee." As we stated in *Rodrigues-Novo*, "[w]hen certain conditions are met . . .[§ 9-508] broadens the definition of employer to cover principal contractors that ordinarily would not be considered the worker's employer under the common law rules of 'master' and 'servant.'" 381 Md. at 57, 846 A.2d at 1052. In particular, § 9-508 provides that, in certain instances, a principal contractor will be liable to an employee of a subcontractor for injuries sustained during the course of the work undertaken by the principal contractor and subcontractor(s). Section 9-508 provides in pertinent part:

> (a) *In general.* A principal contractor is liable to pay to a covered employee or the dependents of the covered employee any compensation that the principal contractor would have been liable to pay had the covered employee been employed directly by the principal contractor if:
> (1) the principal contractor undertakes to perform any work that is part of the business, occupation, or trade of the principal contractor;
> (2) the principal contractor contracts with a subcontractor for the execution by or under the subcontractor of all or part of the work undertaken by the principal contractor; and
> (3) the covered employee is employed in the execution of that work.

\* \* \* \*

12

(f) *Exemptions from liability.* (1) A principal contractor is not liable to pay compensation to an individual under this title if the individual:
(i) is a corporate officer, or a member of a limited liability company, who elects to be exempt from coverage under § 9-206 of this title;
(ii) is a partner in a partnership and the partnership does not elect to make the individual a covered employee under § 9-219 of this title; or
(iii) is a sole proprietor who:
1. does not notify the principal contractor, on a form approved by the Commission, of the individual's status as a covered employee; and
2. does not elect to be a covered employee under § 9-227 of this title.

We have explained that for § 9-508 to apply, there must be: "(1) a principal contractor[;] (2) who has contracted to perform work[;] (3) which is a part of his trade, business or occupation; and (4) who has contracted with any other party as a subcontractor for the execution by or under the subcontractor of the whole or any part of such work." *Honaker v. W.C. & A.N. Miller Dev. Co.,* 278 Md. 453, 460, 365 A.2d 287, 291 (1976) (*Honaker I*). *Accord Honaker v. W.C. & A.N. Miller Dev. Co.,* 285 Md. 216, 225, 401 A.2d 1013, 1017-18 (1979) (*Honaker II*); *Brady v. Ralph Parsons Co.,* 308 Md. 486, 503, 520 A.2d 717, 723 (1987). Accordingly, we further explained that there must be "two contracts." *Honaker I*, 278 Md. at 460, 365 A.2d at 1018. Those contracts must comprise "one [contract] between the principal contractor and a third party whereby it is agreed that the principal contractor will execute certain work for the third party, and [a second contract] between the principal contractor and a person as subcontractor whereby the subcontractor agrees to do the whole or part of such work for the principal contractor." *Honaker I*, 278 Md. at 460, 365 A.2d at 291. "Or, in other words, to [make] the principal contractor a

13

statutory employer[,] he must have contracted in the first instance to do the work himself, and subsequently sublet the whole or a portion of it to someone else." *Honaker I*, 278 Md. at 462, 365 A.2d at 292 (quoting *Long Co. v. State Accident Fund*, 156 Md. 639, 645, 144 A. 775, 778 (1929)). *See also Para v. Richards Grp. of Washington Ltd. P'ship*, 339 Md. 241, 661 A.2d 737 (1995) (discussing the requirement of two contracts to establish a statutory employer/statutory employee relationship and holding that a principal contract must exist at the time of the injury). Therefore, as we stated in *Rodrigues-Novo*, when all of these "conditions are met," an employee of a subcontractor will be able to recover workers' compensation benefits from a principal contractor. 381 Md. at 57, 846 A.2d at 1052.

In the instant case, the Court of Special Appeals relied on the above quoted statement in *Rodrigues-Novo* to conclude that "§ 9-508 abrogates the common law definitions of employer and employee 'when certain conditions are met,' namely, when an individual is dually employed—either by a principal contractor and by a subcontractor, or by a principal contractor and by one's own business." In interpreting § 9-508, the intermediate appellate court stated that although subsection (a) of § 9-508 *broadens* liability, subsection (f) *narrows* liability, in that a sole proprietor is unable to recover from a principal contractor, unless he or she meets the very specific requirements contained in that subsection. Given this structure, the court concluded that if "the common law employment test makes a principal contractor liable as a matter of law, then § 9-508(f) serves no purpose." Therefore, the Court of Special Appeals held that the Commission should have determined whether Renewal was

14

a "principal contractor," whether Elms Construction was a "subcontractor," and whether Elms was Elms Construction's "sole proprietor" for purposes of § 9-508(f).

Elms argues that the Court of Special Appeals erred in directing that a § 9-508 analysis precede a common law employer/employee relationship analysis. He asserts that § 9-508 *broadens* the common law employment analysis in that it provides employer status to a principal contractor that is not the common law employer of the injured worker. The application of § 9-508 stands in contrast to when a common law employment relationship exists, he argues, in that if there is a common law employment relationship, a worker's claim is against the worker's direct employer, and no statutory employment analysis is necessary. Renewal counters that there is no restriction in § 9-508(f) that limits it to statutory employment cases and that therefore the Court of Special Appeals did not err. Renewal further contends that under these facts, further fact-finding is necessary to determine whether Elms was a subcontractor. Accordingly, Renewal urges us to affirm the judgment of the Court of Special Appeals remanding the case to the Commission.

We agree with Elms that the Court of Special Appeals erred. We look to the statutory constructs of § 9-508 to explain.

We have explained that in interpreting the Workers' Compensation Act, we must consider the principle that the Act is remedial in nature. *See Deibler*, 423 Md. at 61, 31 A.3d at 195. We note that "[t]he purpose of the Act is to protect workers and their families from hardships inflicted by work-related injuries by providing workers with compensation for loss

15

of earning capacity resulting from accidental injury arising out of and in the course of employment." *Id.* (citations and quotations omitted). To that end, the Act must be "construed as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes[,]" but "[a]t the same time, we 'may not stifle the plain meaning of the Act, or exceed its purposes, so that the injured worker may prevail.'" *Id.* (quoting *Design Kitchen & Baths v. Lagos*, 388 Md. 718, 724, 882 A.2d 817, 821 (2005), and *Breitenbach v. N.B. Handy Co.*, 366 Md. 467, 473, 784 A.2d 569, 573 (2001)).

Section 9-508 is commonly referred to as the "statutory employer provision" because it creates an employer/employee relationship by statute, which is separate from, and in addition to, the common law employer/employee relationship. We first addressed this section of the Workers' Compensation Act in *State v. Bennett Bldg. Co.*, 154 Md. 159, 140 A. 52 (1928). In that case, we explained:

> It is common practice in certain trades for one party to agree for a reward to complete a certain work or undertaking, and then to enter into subcontracts with various parties providing for the execution by them respectively of specified parts of the whole work or undertaking, so that the whole or part thereof would be done by such subcontractors and their assistants. In this manner the principal contractor would avoid in part the responsibility for accidents happening in the carrying out of the work or undertaking. If this responsibility were so shifted upon parties too weak financially to meet it, and who had not secured compensation to their employees in one of the ways required by the statute, an injured workman, proceeding at common law or under the Workmen's Compensation Act, would obtain neither compensation nor damages. Furthermore, difficult questions arose with reference to whether the workman was the servant of the principal contractor rather than of his immediate employer, depending largely upon who had power to hire and discharge, to direct and control the workmen, and a variety of other circumstances. In order to obviate these contingencies, and more certainly to

16

assure the workman his contemplated compensation, the statute has imposed, under a certain state of circumstances, a liability to pay upon the principal contractor, although he might not have been held at common law the employer of the injured workman. . . . The effect of this provision . . . is to impose the absolute liability of an employer upon the principal contractor when he was not in law the employer of the injured workman.

*Bennett Bldg. Co.*, 154 Md. at 161-62, 140 A. at 53. Further, "the purpose of the statutory employer provision is the protection of the injured worker who might otherwise receive no compensation for work-related injuries if the worker's immediate employer had not obtained workers' compensation coverage and had little resources to pay damages in a personal injury action." *Para*, 339 Md. at 252, 661 A.2d at 743. *See also Palumbo v. Nello L. Teer Co.*, 240 F. Supp. 226, 230 (D. Md. 1965) (stating that § 9-508 "had the purpose of obviating the sometimes difficult and troublesome construction of who was an employee's employer on a construction project where there were numerous subcontractors and subsubcontractors, and to obviate the use of subcontractors and subsubcontractors as a device for avoiding financially responsible workmen's compensation coverage"). Additionally, we have stated that "it is obvious that the General Assembly, in enacting [§ 9-508,] intended principal contractors to bear the responsibility of workers' compensation coverage even if, indeed, especially if, its subcontractors had not procured their own workers' compensation insurance." *Inner Harbor Warehouse, Inc. v. Myers*, 321 Md. 363, 375, 582 A.2d 1244, 1250 (1990).

We discussed the application of § 9-508 in *Inner Harbor*, a case which bears some resemblance to the problem in this case. There, the claimant, Gordon Myers ("Myers"), a

17

truck driver, was the president, sole stockholder, and chief executive officer of G.K. Myers & Son, Inc. ("G.K. Myers"), a close corporation. 321 Md. at 366, 582 A.2d at 1245. G.K. Myers contracted with Inner Harbor to perform truck driving services, which Inner Harbor required in order to complete a contract it had entered into with a third party. *Id.* While performing hauling services for Inner Harbor, Myers was injured. At the time of the accident, G.K. Myers did not carry workers' compensation insurance. Myers filed a claim with the Commission, alleging that he was entitled to insurance coverage under Inner Harbor's policy based on § 9-508.[7] *Id.*

We stated that the "primary issue" before this Court was "whether Myers [was] an individual meant to benefit from the protections of § [9-508]." *Inner Harbor*, 321 Md. at 369, 582 A.2d at 1247. To answer that question, we stated that § 9-508 protects "workers." *Id.* "To qualify as a worker one must also be an employee because independent contractors are not covered by [the Workers' Compensation Act]." *Inner Harbor*, 321 Md. at 369, 582 A.2d at 1247 (footnote omitted). *See also Palumbo*, 240 F. Supp. at 230 ("Section [9-508] must be read in light of [the] basic concept" that "in order for [the Workers' Compensation

_____

[7] Notably, before the Commission, Myers argued that "he was entitled to compensation because he was Inner Harbor's employee, or, in the alternative, that Inner Harbor was his statutory employer." *Inner Harbor*, 321 Md. at 367, 582 A.2d at 1246. The Commission, however, found Myers to be an independent contractor, and on appeal, Myers's only argument for compensation was based on the statutory employer provision, § 9-508. *Id.* Also, we note that at the time of our opinion in *Inner Harbor*, the statutory employer provision was codified in Maryland Code (1957, 1985 Repl. Vol., 1989 Cum. Supp.), Article 101, § 62.

18

Act] to be applicable, the master-servant relationship in the common law sense must exist, and that an independent contractor is not covered[.]"). We then compared the facts of that case to those in *Palumbo v. Nello L. Teer Co.*, a federal District Court case construing the Maryland Workers' Compensation Act, in which the federal court held that a partner of his own company (the subcontractor) was not a covered employee of himself in part because a partner must affirmatively elect to be covered, and he did not so elect; therefore, he could not recover workers' compensation benefits from the principal contractor under § 9-508. *Inner Harbor*, 321 Md. at 370, 372, 582 A.2d at 1247, 1249.

Distinguishing *Palumbo*, we held in *Inner Harbor* that Myers was a covered employee of his own corporation because corporate officers such as Myers are covered under the Act unless they elect *not* to be covered. *Inner Harbor*, 321 Md. at 372, 582 A.2d at 1249. It was only once we determined that Myers was a "covered employee" under the Workers' Compensation Act but was unable to recover compensation for his injury because G.K. Myers was uninsured that we turned to the question of whether he was a statutory employee of Inner Harbor. 321 Md. at 372-73, 582 A.2d at 1249. We then held that Inner Harbor was Myers's statutory employer within the meaning of § 9-508 and, therefore, able to recover compensation through Inner Harbor. 321 Md. at 375-76, 582 A.2d at 1250.

*Inner Harbor* provides a good example of the type of case in which § 9-508 becomes the pre-eminent analysis. Although Myers was "employed directly" by G.K. Myers (the subcontractor), and not by Inner Harbor (the principal contractor), Myers was unable to

19

recover for his injury from G.K. Myers because it was uninsured. In order to be compensated for his injury, Myers was able to recover from Inner Harbor, as if he had "been employed directly by [Inner Harbor,] the principal contractor." § 9-508(a). In that sense, the statute causes Inner Harbor, the principal contractor, to step into the shoes of G.K. Myers, the subcontractor, for the purpose of providing compensation coverage to Myers, the injured worker.

Accordingly, by its terms, § 9-508 only operates to make a principal contractor liable when an employee is unable (apparently for whatever reason) to recover from his direct employer, the subcontractor. As we stated in *Rodrigues-Novo*, § 9-508 applies when, in the principal/subcontractor scenario, the principal contractor "ordinarily would not be considered the worker's employer under the common law rules of 'master' and 'servant.'" 381 Md. at 57, 846 A.2d at 1052. The inverse of this is that if the purported principal contractor *is* considered the common law "master" of the employee, then § 9-508 is inapplicable.[8] This conclusion is logical because the employee is in a position to recover directly from his employer; thus, there is no need to establish a statutory employer/employee relationship.

This is not to say that we overlook the language that narrows the liability established by § 9-508(a), namely, the "sole proprietor" exemption contained in subsection (f). The language of that subsection clearly states that "[a] principal contractor is not liable to pay compensation to an individual under this title if the individual . . . (iii) is a sole proprietor

---

[8] We note that this is our conclusion in the case at bar.

20

who: (1) does not notify the principal contractor . . . and (2) does not elect to be a covered employee under § 9-227 of this title." § 9-508(f)(iii). We do not disagree with the Court of Special Appeals's statement that subsection (f) "narrows liability." It does so, however, within the context of § 9-508 as a whole. As we have oft repeated, we "read[] the statute as a whole to ensure that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory." *Doe v. Montgomery Cnty. Bd. of Elections*, 406 Md. 697, 712, 962 A.2d 342, 351 (2008) (citations and quotations omitted). Thus, if the broad provision of § 9-508 creating the statutory employer/statutory employee relationship is inapplicable, then the narrowing provision of § 9-508 that limits workers' compensation coverage is likewise inapplicable.

Clearly, therefore, the application of § 9-508 to a particular set of facts does not depend on merely a finding that a certain individual or entity is a "principal contractor" or that another is a "subcontractor" or "sole proprietor," as proposed by the Court of Special Appeals. In our view, the statute does not "abrogate" the common law employment relationship; instead, it creates a potential alternate relationship where the common law employer/employee relationship does not exist between the injured worker and the principal contractor.

To conclude, the initial determination in any workers' compensation case is whether the injured worker maintains a common law employer/employee relationship with an alleged employer. If the injured worker does not maintain a common law employer/employee

21

relationship with the alleged employer, the inquiry is over, and the worker is not entitled to recover compensation benefits through the alleged employer. By contrast, when a common law employer/employee relationship exists between the injured worker and his or her direct employer (*e.g.*, a subcontractor), but the injured worker is unable to recover compensation benefits through that employer, only then do we analyze the constructs of the relationship of the injured worker and the principal contractor under § 9-508.[9] This conclusion is consistent with the intent and purpose of the statute, specifically, to provide protection to employees of subcontractors who would otherwise be unable to recover for their work-related injuries. Accordingly, we hold that the Court of Special Appeals erred when it concluded that § 9-508

---

[9] In the case at bar, a common law employer/employee relationship existed between the injured worker (Elms) and the purported principal contractor (Renewal). Therefore, no further inquiry was necessary because the injured worker is entitled to recover workers' compensation benefits through the common law employer.

Assume, for the sake of argument, that Renewal and Elms did not maintain a common law employer/employee relationship. If Elms attempted to recover compensation as Elms Construction's sole proprietor, either through Elms Construction or Renewal, Elms would likely be barred from recovery under § 9-227 or § 9-508(f), respectively. The Workers' Compensation Act presumes that a sole proprietor is not an employee. *See* § 9-227 ("Unless an election is made in accordance with this section, a sole proprietor is not an employee."); *Watson v. Twin City Fire Ins. Co.*, 143 Md. App. 637, 641, 795 A.2d 771, 774 (2002) ("The legislature could make no clearer its intent that a sole proprietor is *not* a covered employee *unless* he makes the election to be a covered employee.") (emphasis in original). A sole proprietor can elect to be a covered employee by "devot[ing] full time to the business of the proprietorship," and by "submit[ting] to the Commission and to the insurer of the proprietor a written notice that names the individual who is to be a covered employee." § 9-227(b), (c). Admittedly, Elms did not make such an election, and as a sole proprietor of Elms Construction, would not be a covered employee. If, for the sake of argument, Elms did make such an election, he would nonetheless be barred from recovery from Renewal under §9-508(f), because he did "not notify the principal contractor, on a form approved by the Commission, of [his] status as a covered employee[.]" § 9-508(f)(iii)(1).

22

"abrogates the common law definitions of employer and employee."

**JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR CARROLL COUNTY. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.**